

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-20-00216-CV

**IN THE INTEREST OF A.F.**, J.J.L., and J.A.R., Children

From the 73rd Judicial District Court, Bexar County, Texas
Trial Court No. 2018-PA-02310
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:     Beth Watkins, Justice

Sitting:          Patricia O. Alvarez, Justice
                 Beth Watkins, Justice
                 Liza A. Rodriguez, Justice

Delivered and Filed: November 25, 2020

AFFIRMED

Appellants M.F. and L.R. appeal the trial court's order terminating M.F.'s parental rights

to A.F., J.J.L., and J.A.R. and L.R.'s parental rights to J.A.R.[1]  Both parents argue the evidence is

legally and factually insufficient to support the trial court's finding that termination is in the

children's best interest.  We affirm the trial court's order.

## BACKGROUND

In October of 2018, the Texas Department of Family and Protective Services ("the

Department") removed the children from the parents' care after receiving a report of physical abuse

and concerns that M.F. used drugs while caring for the children.  M.F. had recently tested positive

---

[1] To protect the privacy of the minor children, we use initials to refer to the children and their biological parents. TEX. R. APP. P. 9.8(b)(2); TEX. FAM. CODE ANN. § 109.002(d).

for methamphetamines while on federal probation. After removing the children, the Department filed a petition to terminate M.F.'s and L.R.'s parental rights, obtained temporary managing conservatorship over the children, and placed them in foster care together. The Department also created a service plan for both parents. The service plan required both M.F. and L.R. to complete a drug assessment and drug treatment program, complete a psychosocial evaluation, engage in individual counseling, and complete parenting classes. The service plan also required M.F. to obtain a safe and stable home. Due to ongoing concerns, the Department pursued termination of their parental rights.

The trial court held a one-day bench trial at which counsel for both parents and M.F. appeared. At the time of trial, A.F. was fourteen years old, J.J.L. was seven, and J.A.R. was six. The trial court heard testimony from the following witnesses: (1) M.F.; (2) M.F.'s federal probation officer; (3) Department Caseworker Monica Garcia; (4) Department Caseworker Tracie Ann Barrera; (5) the children's foster mother; and (6) the CASA volunteer assigned to this case. The court signed an order terminating M.F.'s parental rights under 161.001(b)(1)(N), (O), and (P) and terminating L.R.'s parental rights under section 161.001(b)(1)(N) and (O). The trial court also found that termination of M.F.'s and L.R.'s parental rights was in the best interest of the children. Both M.F. and L.R. appealed, arguing the evidence is legally and factually insufficient to support the trial court's finding that termination is in the children's best interest.

### ANALYSIS

#### *Standard of Review*

The involuntary termination of a natural parent's rights implicates fundamental constitutional rights and "divests the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit from the parent." *In re S.J.R.-Z.*, 537 S.W.3d 677, 683 (Tex. App.—San Antonio 2017, pet. denied) (internal quotation

marks omitted). "As a result, appellate courts must strictly scrutinize involuntary termination proceedings in favor of the parent." *Id.* The Department had the burden to prove, by clear and convincing evidence, both that a statutory ground existed to terminate J.D.'s parental rights and that termination was in the best interest of the children. TEX. FAM. CODE ANN. § 161.206; *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007; *In re S.J.R.-Z.*, 537 S.W.3d at 683.

When reviewing the legal and factual sufficiency of evidence supporting a trial court's termination order, we apply well-established standards of review. *See* TEX. FAM. CODE §§ 101.007, 161.206(a); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). To determine whether the Department presented clear and convincing evidence, a legal sufficiency review requires us to "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d at 266. We "assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *In re R.S.-T.*, 522 S.W.3d 92, 98 (Tex. App.—San Antonio 2017, no pet.). "A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *In re J.F.C.*, 96 S.W.3d at 266. Nevertheless, "we may not simply disregard undisputed facts that do not support the finding; to do so would not comport with the heightened burden of proof by clear and convincing evidence." *In re S.L.M.*, 513 S.W.3d 746, 748 (Tex. App.—San Antonio 2017, no pet.). If a reasonable factfinder could "form a firm belief or conviction" that the matter is true, then the evidence is legally sufficient. *Id*. at 747.

In contrast, in conducting a factual sufficiency review, we must review and weigh all the evidence, including evidence contrary to the trial court's findings. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). We consider whether the disputed evidence is such that a reasonable factfinder could not have resolved it in favor of the challenged finding. *In re J.F.C.*, 96 S.W.3d at 266. The evidence is factually insufficient only if "in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction." *Id.*

In both a legal and a factual sufficiency review, the trial court, as factfinder, is the sole judge of the weight and credibility of the evidence. *In re E.X.G.*, No. 04-18-00659-CV, 2018 WL 6516057, at *1 (Tex. App.—San Antonio Dec. 12, 2018, pet. denied) (mem. op.). We must defer to the factfinder's resolution of disputed evidentiary issues and cannot substitute our judgment for that of the factfinder. *See, e.g., In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam) (factual sufficiency); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (legal sufficiency).

### *Best Interest*

### *Applicable Law*

There is a strong presumption that a child's best interest is served by maintaining the relationship with the natural parent, and the Department has the burden to rebut that presumption. *See, e.g., In re R.S.-T.*, 522 S.W.3d at 97. In determining whether the Department satisfied this burden, the legislature has provided several factors for courts to consider regarding a parent's willingness and ability to provide a child with a safe environment.[2] TEX. FAM. CODE ANN.

---

[2] These factors include, inter alia: "(1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department or other agency; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family

§ 263.307(b). Courts may also apply the list of factors promulgated by the Texas Supreme Court in *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).[3]

A best interest finding, however, does not require proof of any particular factors. *See In re G.C.D.*, No. 04-14-00769-CV, 2015 WL 1938435, at *5 (Tex. App.—San Antonio Apr. 29, 2015, no pet.) (mem. op.). Neither the statutory factors nor the *Holley* factors are exhaustive. *See In re J.B.-F.*, No. 04-18-00181-CV, 2018 WL 3551208, at *3 (Tex. App.—San Antonio July 25, 2018, pet. denied) (mem. op.). Additionally, evidence that proves a statutory ground for termination is probative on the issue of best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). Finally, "[a] trier of fact may measure a parent's future conduct by his past conduct [in] determin[ing] whether termination of parental rights is in the child's best interest." *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied).

### *M.F.*

The Department produced evidence it removed the children from M.F.'s care because she tested positive for methamphetamines while on federal probation. The evidence shows that M.F. was arrested in May of 2018 and sentenced to federal probation for twenty-four months. M.F. admitted that while she was on probation, she tested positive for methamphetamines and went "on the run." *See In re R.S.*, No. 01-20-00126-CV, 2020 WL 4289978, at *8 (Tex. App.—Houston [1st Dist.] July 28, 2020, no pet.) (mem. op.) (noting parent's failure to abide by terms of probation

---

or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills [. . .]; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child." TEX. FAM. CODE ANN. § 263.307(b).

[3] Those factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist those individuals to promote the best interest of the child; (6) the plans for the child by these individuals or the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.*

supports best interest finding). After the Department took possession of the children, M.F. was arrested again and incarcerated for ten months. M.F. testified that when she was released in December of 2019, she used drugs again because she had been "struggling with an addiction" since she was twelve years old. She tested positive for methamphetamines in January of 2020, and both caseworkers expressed concern with M.F.'s inability to stay sober. This court has recognized that a parent's frequent or long-term drug use is relevant to a best interest determination, and it can support a factfinder's firm belief or conviction that termination of M.F.'s parental rights is in the children's best interest. *See In re Z.R.M.*, No. 04-15-00063-CV, 2015 WL 4116049, at \*6 (Tex. App.—San Antonio July 8, 2015, no pet.) (mem. op.).

The Department also produced evidence that M.F. failed to complete her service plan. The evidence showed that when the Department took custody of the children, Caseworker Garcia called M.F. to set up a meeting so that she could go over her service plan and set up a visitation schedule. Garcia testified M.F. did not show up to the meeting and M.F. later said she was not going to visit the children because there was a warrant outstanding for her arrest. Garcia further testified that once M.F. was arrested, she had difficulty communicating with her. *See* TEX. FAM. CODE § 263.307(b)(10) (listing parent's willingness to cooperate with the Department goes to a best interest determination). The second caseworker assigned to the case, Barrera, also testified she had difficulty communicating with M.F. *See id.*

The evidence also shows that M.F. attempted to comply with her service plan only after she was arrested the second time. *See In re S.R.*, No. 07-19-00164-CV, 2019 WL 4726205, at \*6 (Tex. App.—Amarillo Sept. 26, 2019, no pet.) (mem. op.) (considering a parent's late attempt to start services in a best interest determination). Both caseworkers testified M.F. attended parenting classes while incarcerated, and when released on probation, she started an inpatient drug treatment program where she continued parenting classes and also attended anger management classes and

group counseling. Barrera testified that although M.F. was currently engaging in those services, it was unclear whether M.F. could maintain sobriety outside of a controlled setting. M.F. testified that she planned to pursue an outpatient drug treatment program for four months and an after-care program for one year after completing inpatient treatment. M.F. admits, however, she has not completed her service plan because she has not completed individual therapy and she does not have the ability to provide the children with a safe and stable home. *See In re A.M.S.*, No. 04-18-00973-CV, 2019 WL 2194067, at \*5 (Tex. App.—San Antonio May 22, 2019, no pet.) (noting parent's inability to provide stable home supports best interest finding).

The court also heard evidence regarding M.F.'s lack of parenting abilities. Specifically, Barrera testified that when M.F. was released from prison in December of 2019, she began attending scheduled visits with the children, and during these visits, she noticed M.F.'s relationship with the children was more of a friendship. *See In re J.D.*, 436 S.W.3d 105, 119 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (providing parent's lack of parenting skills may be considered when looking at children's best interest). Barrera testified that when she observed M.F. interact with the children, she treated the children "like equals" and sometimes, made fun of them or told them negative comments about the caseworkers. The court also heard testimony from the CASA volunteer that M.F. snuck a cell phone to A.F. at a visit, and then used it to send her daughter an inappropriate text message.

The Department also produced evidence that the children were thriving in their foster home. *See In re I.N.D.*, No. 04-20-00121-CV, 2020 WL 2441375, at \*6 (Tex. App.—San Antonio May 13, 2020, no pet.) (considering evidence that children were doing well in foster placements in best interest analysis); *see also In re C.H.*, 89 S.W.3d at 28 ("Evidence about placement plans and adoption are, of course, relevant to best interest."). Specifically, Barrera testified the children were "flourishing" in their foster home and they were engaged in school and outside activities.

They also had a close bond with not only their foster parents, but also their extended foster family. Barrera further testified the foster parents placed the children in therapy. Specifically, J.J.L. was receiving treatment for his anger issues and A.F. was receiving treatment for separation anxiety, abandonment issues, and depression. The trial court also heard testimony from the children's foster mother, who testified she and her husband plan to adopt the children. The foster mother described how the children changed from being disengaged to being happy, enjoying school, and having fun. The foster mother added she wanted to do everything she could to ensure the children were successful.

After reviewing all the evidence, we conclude a reasonable factfinder could have formed a firm belief or conviction that termination of M.F.'s parental rights was in the best interest of her children. *See In re S.L.M.*, 513 S.W.3d at 750. And although M.F. contends the evidence shows she is making sincere efforts to complete her service plan and reunite with her children, the evidence also shows M.F. has continued to engage in drug use, has not completed her service plan, and does not have the ability to provide a safe and stable home environment for the children. *See In re M.R.*, 243 S.W.3d 807, 821 (Tex. App.—Fort Worth 2007, no pet.) ("A parent's drug use, inability to provide a stable home, and failure to comply with a family service plan support a finding that termination is in the best interest of the child."). We therefore overrule M.F.'s arguments to the contrary and hold that legally and factually sufficient evidence supports the trial court's findings, by clear and convincing evidence, that termination of M.F.'s parental rights was in the best interest of her children.

*L.R.*

Turning to L.R., Garcia testified that when the Department took custody of the children, she met with L.R., outlined his service plan requirements, and explained to him that failure to complete his service plan could result in termination of his parental rights. She testified L.R.

"made some appointments, but he never followed through," and in February of 2019, U.S. Marshals arrested L.R. while he was on probation for human trafficking. *See In re R.S.*, 2020 WL 4289978, *6. After his arrest, she was unable to contact him. Garcia testified that at the time of trial, L.R. was not in compliance with his service plan. *See In re S.B.*, 207 S.W.3d 877, 887–88 (Tex. App.—Fort Worth 2006, no pet.) (holding evidence of parent's failure to comply with family service plan supports finding that termination is in child's best interest).

In addition, Barrera testified L.R. had not made any effort to comply with his service plan. *See id.* She testified that after L.R. was released from prison, he moved to Harlingen with his girlfriend. She contacted L.R. and expressed the importance of complying with the service plan, but L.R. told her that he did not want to work with the Department until he confirmed J.A.R. was his child. However, when asked to take a paternity test, L.R. refused. *See* TEX. FAM. CODE § 263.307(b)(10). Barrera further testified that she attempted to set up services for L.R. in Harlingen, but he did not engage. *See id.* She specified that she sent a courtesy worker to Harlingen to meet with L.R., but every time the courtesy worker visited his home, L.R. was not there. Barrera told the court that based on L.R.'s lack of interest, she believed termination of his parental rights was in J.A.R.'s best interest.

L.R. argues, however, this evidence is legally and factually insufficient because the Department did not produce evidence regarding a majority of the best interest factors. However, evidence of a majority of the statutory or *Holley* factors is not required. *In re J.B.-F.*, 2018 WL 3551208, at *3 (noting, "[e]vidence of a single factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest."). L.R. further argues he regularly visited the children, and the record shows that L.R. regularly visited the children while they were placed with his parents. But after the Department removed the children from L.R.'s

parents' care, L.R. no longer expressed an interest in working with the Department. Instead, L.R. insisted on a paternity test, yet failed to take one when the Department offered.

After reviewing all the evidence, we conclude a reasonable factfinder could have formed a firm belief or conviction that termination of L.R.'s parental rights was in J.A.R.'s best interest. *See In re S.L.M.*, 513 S.W.3d at 750. Accordingly, we overrule L.R.'s arguments to the contrary and hold that legally and factually sufficient evidence supports the trial court's findings, by clear and convincing evidence, that termination of L.R.'s parental rights was in the best interest of J.A.R.

## CONCLUSION

We affirm the trial court's order of termination.

Beth Watkins, Justice