IN the INTEREST OF S.L.M. and L.P.M., Children

No. 04–16–00612–CV

Court of Appeals of Texas, San Antonio.

Delivered and Filed: January 25, 2017

Shawn Darrick Sheffield, Law Office of Shawn Sheffield, San Antonio, TX, for Appellant.

Jennifer Rossmeier, Bexar County Assistant District Attorney, San Antonio, TX, for Appellee.

Sitting: Karen Angelini, Justice, Marialyn Barnard, Justice, Luz Elena D. Chapa, Justice

## MEMORANDUM OPINION

Opinion by: Luz Elena D. Chapa, Justice

Yvonne[1] appeals the trial court's order terminating her parental rights to her daughter S.L.M. (born 2005) and her son

---

**1.** To protect the identity of the minor children, we refer to the children's mother by an alias and to the children by their initials. *See* TEX. FAM. CODE ANN. § 109.002(d) (West 2014); TEX. R. APP. P. 9.8(b)(2).

L.P.M. (born 2007). She contends there is legally and factually insufficient evidence that termination of her parental rights is in the children's best interest. We affirm the trial court's judgment.

## BACKGROUND

The Department of Family and Protective Services filed a petition to terminate Yvonne's parental rights. The Department removed S.L.M. and L.P.M. based on allegations of neglectful supervision, specifically that Yvonne was addicted to cocaine, selling heroin, and "selling her Food Stamps for drugs." The case proceeded to a bench trial, at which Yvonne and Department caseworkers Sade Frank and Mandy Vasquez testified. The trial court thereafter terminated Yvonne's parental rights to the children,[2] finding she knowingly endangered the children, constructively abandoned the children, and failed to comply with provisions of her court-ordered family service plan. The trial court also found termination of her parental rights was in the children's best interest. Yvonne appeals, challenging only the legal and factual sufficiency of the evidence to support the trial court's best-interest finding.

## STANDARD OF REVIEW

A judgment terminating parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2016). To determine whether this heightened burden of proof was met, we employ a heightened standard of review to determine whether a "factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *In re C.H.*, 89 S.W.3d 17, 25

---

**2.** The trial court also terminated the parental rights of the children's father, who has not appealed the order terminating his parental rights.

(Tex. 2002). "This standard guards the constitutional interests implicated by termination, while retaining the deference an appellate court must have for the factfinder's role." *In re O.N.H.*, 401 S.W.3d 681, 683 (Tex. App.–San Antonio 2013, no pet.). We do not reweigh issues of witness credibility but defer to the factfinder's reasonable determinations of credibility. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005).

■ A legal sufficiency review requires us to examine the evidence "in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could have done so, and we disregard all evidence that a reasonable factfinder could have disbelieved or found incredible. *Id.* But we may not simply disregard undisputed facts that do not support the finding; to do so would not comport with the heightened burden of proof by clear and convincing evidence. *Id.* When conducting a factual sufficiency review, we evaluate "whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *Id.* The evidence is factually insufficient "[i]f, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction." *Id.*

### CHILDREN'S BEST INTEREST

■ The best-interest determination is a wide-ranging inquiry, and the Texas Supreme Court has set out some factors relevant to the determination:

- the desires of the child;
- the emotional and physical needs of the child now and in the future;
- the emotional and physical danger to the child now and in the future;
- the parental abilities of the individuals seeking custody;
- the programs available to assist these individuals to promote the best interest of the child;
- the plans for the child by these individuals or by the agency seeking custody;
- the stability of the home or proposed placement;
- the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and
- any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976). The list is not exhaustive, and not every factor must be proved to find that termination is in the child's best interest. *In re C.H.*, 89 S.W.3d at 27. Evidence of only one factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest—especially when undisputed evidence shows that the parental relationship endangered the child's safety. *Id.* "Evidence that the parent has committed the acts or omissions prescribed by section 161.001 may also be probative in determining the child's best interest; but the mere fact that an act or omission occurred in the past does not *ipso facto* prove that termination is currently in the child's best interest." *In re O.N.H.*, 401 S.W.3d at 684 (internal citation omitted). "A factfinder may infer that past conduct endangering the well-being of a child may recur in the future if the child is returned to the parent." *In re D.M.*, 452 S.W.3d 462, 471 (Tex. App.–San Antonio 2014, no pet.).

## A. The Evidence

Department caseworker Frank testified that before the children were removed, Yvonne, her husband Oscar, and the children were panhandling and selling apples, candy, and water at an intersection in San Antonio. She testified that when the Department first removed the children to place them in foster care, they appeared "unkempt" and had on shoes and clothing that did not fit them. Frank stated the children were angry with Yvonne and "vent[ed] about the lack of the relationship" with her, but the children loved and had a bond with her. She stated the Department planned to place the children with a maternal aunt, the children had visits with their aunt, and they were happy and excited about spending time with her. Frank testified the children had siblings who lived with their grandmother and who they would see during their visits with their aunt. She testified L.P.M. expressed fear of being placed back with Yvonne because he was afraid of her new husband, Oscar.

Frank further testified Yvonne requested and received additional time to complete her family service plan. With the additional time, Yvonne completed only her parenting class, but not her requirements for counseling, drug treatment, stable housing, stable employment, and submitting to random drug tests. Frank stated Yvonne started a drug treatment program nearly a year after the children were removed, but Yvonne was "inconsistent" and would not be allowed into class because she arrived "30 to 45 minutes late." Frank testified Yvonne was tested three times for drugs and she tested positive each time. Frank stated that after the children were placed in foster care, Yvonne had no visits with the children.

According to Frank, the children had "missed a lot of school" and both were behind. She stated that after the children were placed in foster care, S.L.M. received assistance in class and L.P.M. received additional services and special education because he had been diagnosed with a learning disability. Frank testified both had improved in school after receiving assistance.

Department caseworker Vasquez testified L.P.M. was once "playing around" and wearing Yvonne's shoes, and Oscar "bought him a tutu and made him kind of like dance while he was wearing it" and "called him a faggot." L.P.M. also told Vasquez that Oscar once "whipped [him] with an extension cord" and he did not want to go back to his mother if she remained with Oscar. Vasquez testified S.L.M. told her she believed Yvonne "doesn't care about us." She also stated the children were excited about their visits with their aunt because they enjoyed "spend[ing] time with their brothers and sisters and their cousins." Vasquez stated she believed the children's aunt is protective of the children.

Yvonne testified she and Oscar were "attending NA" and counseling sessions once a week. She stated she and Oscar had both received "four clean UAs." She also stated she was in classes and learning "how to stay sober, how to use [her] parenting skills and disciplining [her] kids." Yvonne also testified she had recently moved into a one-bedroom apartment and she and Oscar now have jobs "throw[ing] the newspaper." Yvonne testified she was currently on methadone, but her dosage of methadone has increased since she started the program. She further testified that when the case started she was using "[h]eroin and ice"; she had been using drugs for about five years; she and Oscar were spending about $150 a day on heroin; and they were using the money from street vending to buy drugs. Yvonne testi-

fied she married Oscar knowing the children were afraid of him, but denied that he abused the children. She also testified she had not paid any child support payments.

## B. Analysis

■ There is evidence the Department planned to have the aunt adopt the children, and the children desired to live with or be adopted by their aunt. It was undisputed the children were excited about spending time with their aunt because they would have the opportunity to spend more time with their siblings and extended family. There is also evidence that Yvonne demonstrated she was unable to meet the children's physical, emotional, and educational needs, and continued to use drugs despite the availability of programs and services. There is evidence Yvonne's husband Oscar physically and emotionally abused L.P.M., and it is undisputed Yvonne married Oscar knowing the children were afraid of him. There is also evidence Yvonne and Oscar were unable to provide a suitable home for the children.

Although Yvonne relies heavily on her testimony that she has improved her lifestyle and parenting skills, the Department's witnesses gave conflicting testimony. Because a reasonable factfinder could have disbelieved Yvonne's testimony that she has improved, we must disregard it in our legal sufficiency review. *See In re J.F.C.*, 96 S.W.3d at 266. Furthermore, a factfinder could have reasonably resolved this disputed evidence in favor of the trial court's finding. *See id.* We hold a factfinder could reasonably have formed a firm belief or conviction that termination of Yvonne's parental rights to S.L.M. and L.P.M. is in the children's best interest. Because we conclude the evidence is legally and factually sufficient to support the trial court's best-interest finding, we overrule Yvonne's sole issue.

### CONCLUSION

We affirm the trial court's judgment.