

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-21-00031-CV

**IN THE INTEREST OF C.C.**, a Child

From the 45th Judicial District Court, Bexar County, Texas
Trial Court No. 2020-CI-12410
Honorable Martha Tanner, Judge Presiding[1]

Opinion by:      Beth Watkins, Justice

Sitting:         Irene Rios, Justice
                 Beth Watkins, Justice
                 Lori I. Valenzuela, Justice

Delivered and Filed: July 28, 2021

AFFIRMED

S.T. appeals the trial court's order terminating her parental rights to her daughter, C.C.[2] In a single issue on appeal, she argues the evidence is insufficient to support the trial court's finding that termination of her parental rights is in C.C.'s best interest. We affirm the trial court's order.

### BACKGROUND

The Texas Department of Family and Protective Services removed C.C. from S.T.'s care after receiving a referral that C.C. and S.T. tested positive for cocaine at C.C.'s birth. Concerns about S.T.'s drug use led the Department to obtain temporary managing conservatorship over the

---

[1] The Honorable Mary Lou Alvarez is the presiding judge of the 45th Judicial District Court, Bexar County, Texas. However, a visiting judge, the Honorable Martha Tanner, presided over this trial and signed the order at issue.

[2] To protect the privacy of the minor child, we use initials to refer to the child and her biological mother. TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

newborn, remove her from her mother's care, and file a petition to terminate S.T.'s parental rights. The Department created a service plan for S.T. but ultimately pursued termination. After a one-day bench trial, the court found termination to be in C.C.'s best interest and terminated S.T.'s parental rights on multiple grounds. S.T. timely appealed.

## BEST INTEREST ANALYSIS

### *Standard of Review*

The involuntary termination of a natural parent's rights implicates fundamental constitutional rights and divests the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit from the parent. *In re S.J.R.-Z.*, 537 S.W.3d 677, 683 (Tex. App.—San Antonio 2017, pet. denied). "As a result, appellate courts must strictly scrutinize involuntary termination proceedings in favor of the parent." *Id.* The Department had the burden to prove, by clear and convincing evidence, both that a statutory ground existed to terminate S.T.'s parental rights and that termination was in the best interest of C.C. TEX. FAM. CODE ANN. § 161.206; *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007; *In re S.J.R.-Z.*, 537 S.W.3d at 683.

When reviewing the sufficiency of the evidence supporting a termination order, we apply well-established standards of review. *See* TEX. FAM. CODE ANN. §§ 101.007, 161.206(a); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). To determine whether the Department presented clear and convincing evidence, a legal sufficiency review requires us to "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d at 266. We "assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder

could do so." *In re R.S.-T.*, 522 S.W.3d 92, 98 (Tex. App.—San Antonio 2017, no pet.). "A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *In re J.F.C.*, 96 S.W.3d at 266. Nevertheless, "we may not simply disregard undisputed facts that do not support the finding; to do so would not comport with the heightened burden of proof by clear and convincing evidence." *In re S.L.M.*, 513 S.W.3d 746, 748 (Tex. App.—San Antonio 2017, no pet.). If a reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then the evidence is legally sufficient. *Id*.

In a factual sufficiency review, we review and weigh all the evidence, including the evidence that is contrary to the trial court's findings. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). We consider whether the disputed evidence is such that a reasonable factfinder could not have resolved it in favor of the challenged finding. *In re J.F.C.*, 96 S.W.3d at 266. The evidence is factually insufficient only if "in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction." *Id.*

In both legal and factual sufficiency review, the trial court, as factfinder, is the sole judge of the weight and credibility of the evidence. *In re A.F.*, No. 04-20-00216-CV, 2020 WL 6928390, at *2 (Tex. App.—San Antonio Nov. 25, 2020, no pet.) (mem. op.). We must defer to the factfinder's resolution of disputed evidentiary issues and cannot substitute our judgment for that of the factfinder. *See, e.g., In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam) (factual sufficiency); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam) (legal sufficiency).

### *Applicable Law*

There is a strong presumption that a child's best interest is served by maintaining the relationship between a child and the natural parent, and the Department has the burden to rebut

that presumption by clear and convincing evidence. *See, e.g.*, *In re R.S.-T.*, 522 S.W.3d at 97. To determine whether the Department satisfied this burden, the Texas Legislature has provided several factors for courts to consider regarding a parent's willingness and ability to provide a child with a safe environment, and the Texas Supreme Court has provided a similar list of factors to determine a child's best interest. TEX. FAM. CODE ANN. § 263.307(b); *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

A best interest finding, however, does not require proof of any particular factors. *See In re Z.F.S.*, No. 04-20-00489-CV, 2021 WL 603372, at *6 (Tex. App.—San Antonio Feb. 17, 2021, no pet.) (mem. op.). Neither the statutory factors nor the *Holley* factors are exhaustive, and "[e]vidence of a single factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest." *See id*. Finally, "[a] trier of fact may measure a parent's future conduct by his past conduct [in] determin[ing] whether termination of parental rights is in the child's best interest." *See id*.

### *Application*

The first *Holley* factor asks about the desires of the child. *Holley*, 544 S.W.2d at 371–72. When a child is too young to express her desires, the fact finder may consider whether the child has bonded with the foster family, is well cared for by them, and has spent minimal time with the parent. *In re A.F.C.*, No. 04-17-00080-CV, 2017 WL 3159447, at *3 (Tex. App.—San Antonio July 26, 2016, no pet.) (mem. op.); *see also* TEX. FAM. CODE § 263.307(b)(1) (considering child's age and physical and mental vulnerabilities). Here, C.C. was seventeen months old at the time of trial—too young to express her own desires. But the trial court heard testimony that C.C. was removed from her mother's care when she was one month old, placed with an interim foster family for one month, and then placed with her existing foster family—who intends to adopt her—for the past fifteen months. The Department's caseworkers testified that C.C. and her foster mother are

very bonded, and S.T. agreed with their testimony that C.C. is thriving in her foster family's care. The bond between C.C. and her foster mother was a sharp contrast to C.C.'s bond with S.T., whom she did not recognize at early visits. During those visits, S.T. "often left [C.C.] in her car seat while she . . . played music on her phone and was rocking the baby in the car seat with her foot." S.T. attended most of her in-person visits with C.C. before the Coronavirus pandemic, but was inconsistent with virtual visits during the pandemic, and still opted for virtual visits once in-person visits became an option again. This factor supports the trial court's best interest finding.

The second and third *Holley* factors inquire into the current and future emotional and physical needs of the child as well as any emotional and physical danger to the child. *Holley*, 544 S.W.2d at 371–72. The Department's overriding concern was S.T.'s drug use. *See* TEX. FAM. CODE § 263.307(b)(8) (considering history of substance abuse by child's family). Drug use can destabilize the home and expose the children to physical and emotional harm if not resolved. *In re K.J.G.*, No. 04-19-00102-CV, 2019 WL 3937278, at *8 (Tex. App.—San Antonio Aug. 21, 2019, pet. denied) (mem. op.). As described above, C.C. had cocaine in her system at birth. The original caseworker testified that S.T. admitted she knew she was pregnant and did cocaine two days before C.C. was born in June of 2019. Even after completing a drug treatment program, S.T. tested positive for cocaine in October, November, and December of 2019, as well as March, July, and October of 2020. S.T. denied using drugs since July of 2019 and attributed those positive test results to sleeping "on a bed that has cocaine on it." S.T. also believed she tested positive for drugs in March and July because during that time, she was around other people who were using drugs. The caseworker testified that such an environment would not be safe for C.C.

At trial, S.T. argued that hair follicle drug tests show drug use in the past 90 days, and drugs remain in the hair follicles of African-American women like her longer than 90 days. She testified that her hair follicle test results have shown decreasing levels of drugs over time and the

Department agrees her urinalysis drug tests were consistently negative. S.T. argues these results support her testimony that the last time she used drugs was July of 2019. However, the trial court, as the sole judge of the weight and credibility of the evidence, could have rejected this theory. *In re A.F.*, 2020 WL 6928390, at *2. That conclusion would have been supported by the fact that S.T. was twice ordered to take a nailbed drug test, and twice declined—the first time because she had recently paid for acrylic nails and "wasn't going to ruin them for a drug test" and the second time because during a two-week period, she could not get off work when the facility could perform the test. She was referred to weekly NA and AA meetings—she went regularly in March, one time in April, and failed to return after April. Instead, she testified she was working with a recovery coach with the San Antonio Council on Alcohol and Drug Awareness. The first report the caseworker received from S.T.'s recovery coach, however, was the day before trial.

The caseworker testified that S.T. never accomplished the sobriety necessary to mitigate the risk of danger to C.C., adequately addressed the reasons C.C. was removed from her care, or demonstrated that she can lead a drug-free life or provide a drug-free home. *See* TEX. FAM. CODE § 263.307(b)(11) (willingness of family to effect positive environmental and personal changes within a reasonable period of time). The caseworker did not believe S.T. could meet C.C.'s physical and emotional needs. We conclude the second and third *Holley* factors support the trial court's best interest finding.

The fourth and fifth *Holley* factors ask about the parent's abilities and the programs available to support those individuals to promote the best interest of the child. *Holley*, 544 S.W.2d at 371–72. To her credit, S.T. completed many of the tasks that were required by her parenting plan, including the OSAR drug assessment, the parenting class, and the domestic violence class. She also maintained housing and employment throughout the case. The caseworker had no concerns as a result of her scheduled home visit one month before trial. *See* TEX. FAM. CODE

§ 263.307(b)(12) (whether child's family demonstrates adequate parenting skills). At the previous unscheduled visit, however, the caseworker testified S.T. was on her balcony holding a tallboy of beer at 11 a.m. and yelling at an unidentified man, then refused the caseworker entry. She also failed to complete the therapy called for in her service plan and was unsuccessfully discharged by all three therapists the Department arranged for her. Similarly, she did not follow up with the outpatient drug treatment program that was recommended. She did, however, complete a psychiatric evaluation, engage in therapy she arranged for herself, and take the medications that were prescribed at the time of trial. *See id.* § 263.307(b)(10) (willingness to seek, accept, and complete counseling services).

It is apparent that S.T. loves her daughter very much. She has a bedroom for C.C. with a crib that transitions into a toddler bed, and she wants C.C. to have a relationship with her five-year-old sister. She testified she changed C.C.'s diaper every time she visited, and would take food, toys, a drink and a cup, as well as diapers and wipes. She also testified she is a different person now than she was when the case started. But the caseworker testified despite the Department offering all appropriate services to S.T. to help her change her lifestyle, she had not satisfactorily addressed the reasons C.C. came into the Department's care or demonstrated adequate insight into her drug problem. These factors likewise support the trial court's decision.

The sixth and seventh Holley factors question the plans for the child and the stability of the proposed placement. *Holley*, 544 S.W.2d at 371–72. Earlier in the case, the Department sought C.C.'s adoption by a paternal relative, but ultimately concluded that was not an appropriate placement. S.T. reported that she would rather C.C. stay with her current foster mother than be placed with S.T.'s own family. C.C. has lived with her current foster family for fifteen months, and the Department reported the foster mother's intent to adopt C.C. The foster mother willingly takes C.C. to occupational, speech, and physical therapies as well as the medical appointments

required to treat C.C.'s ear, nose, and throat problems. The foster mother never declined any sort of participation from C.C.'s parents, has facilitated visits at the park for the family to attend, and has even maintained a Facebook page to keep the parents involved. In this placement, it is undisputed that C.C. "has been in a safe, secure environment where she's looked after, is fed properly, is not engaged in any sort of violence, is not engaged in any drug use, [and] sees her medical provider regularly." The Department's caseworker testified C.C. is thriving in the care of her foster mother, who can meet all the child's physical and emotional needs. This factor likewise supports the trial court's best interest finding.

Much of the evidence described above also speaks to *Holley* factors eight and nine— evidence indicating that the existing parent-child relationship is not a proper one, and any excuse for any parental acts or omissions. *Id.* The caseworker testified S.T. "is still having very significant drug issues" and demonstrated a lack of insight into her drug problem. *See In re A.M.L.*, No. 04-19-00422-CV, 2019 WL 6719028, at *3 (Tex. App.—San Antonio Dec. 11, 2019, pet. denied) (mem. op.) (considering evidence that child was born addicted to heroin and father admitted to abusing drugs and "didn't show up" for drug tests in best interest determination); *see also In re J.M.T.*, 519 S.W.3d 258, 269 (Tex. App.—Houston [1st. Dist.] 2017, pet. denied) (recognizing parent's drug use during pendency of case showed his poor judgment and lack of parenting skills). Again, the trial court, as the sole judge of the weight and credibility of the evidence was free to credit the drug test results and to discredit S.T.'s explanations for those test results. *See, e.g., In re A.F.*, 2020 WL 6928390, at *2. The evidence of S.T.'s continued drug use demonstrates that the parent-child relationship is not proper and supports the trial court's best interest finding.

After reviewing the evidence in the light most favorable to the judgment, we conclude a reasonable factfinder could have formed a firm belief or conviction that termination of S.T.'s parental rights was in C.C.'s best interest. *In re J.F.C.*, 96 S.W.3d at 266. Additionally, after

reviewing the entire record, we cannot say the evidence contrary to the trial court's findings is so significant that a factfinder could not have reasonably formed a firm belief or conviction that termination of S.T.'s parental rights was in C.C.'s best interest. *Id.* We therefore hold legally and factually sufficient evidence supports the trial court's best interest finding and overrule S.T.'s arguments to the contrary.

**CONCLUSION**

We affirm the trial court's order of termination.

Beth Watkins, Justice
