

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-22-00039-CV

**IN THE INTEREST OF J.E.G.**, B.M.A. Jr., and A.G.A., Children

From the 225th Judicial District Court, Bexar County, Texas
Trial Court No. 2021-PA-00239
Honorable Charles E. Montemayor, Judge Presiding

### OPINION ON REHEARING

Opinion by:   Lori I. Valenzuela, Justice

Sitting:   Luz Elena D. Chapa, Justice
  Beth Watkins, Justice
  Lori I. Valenzuela, Justice

Delivered and Filed: August 10, 2022

AFFIRMED

D.G. appeals the trial court's order terminating her parental rights to her children J.E.G., B.M.A., Jr., and A.G.A.[1] D.G. asserts the evidence is legally and factually insufficient to support the trial court's predicate findings under Texas Family Code section 161.001(b). On May 25, 2022, we issued an opinion and judgment affirming the trial court's Order of Termination. Although a motion for reconsideration en banc is pending, the panel, on its own motion, withdraws

---

[1] To protect the privacy of the minor children, we use initials to refer to the children and their biological parents. TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

its May 25, 2022 opinion and judgment, and substitutes this opinion and judgment in their place.[2] We affirm.

## BACKGROUND

On February 10, 2021, the Department of Family and Protective Services (the "Department") filed a petition for protection of a child, for conservatorship, and for termination of the parent-child relationship. On January 5, 2022, the trial court conducted the termination hearing at which two witnesses—the Department caseworker and the paternal grandfather—testified. At the time of the hearing, J.E.G. was six years old, B.M.A. was five years old, and A.G.A. was four years old. The children were living with their paternal grandfather. The Department caseworker, Bianca Riojas, testified the children were taken into the Department's care in late 2020, when a referral was made to the Department that the children were left alone for extended periods of time with the doors locked from the outside. Riojas said there were also concerns about the use of marijuana and methamphetamines.

D.G. was taken into police custody on charges of endangerment/abandonment of a child and drug possession with intent to deliver. The children were with her when she was arrested. Two indictments were admitted into evidence: the January 2021 indictment for placing her three children in imminent danger by failing to restrict access to a controlled substance and for abandonment of two of the children by leaving them unsupervised at home alone, and the March 2021 indictment for possession with intent to deliver methamphetamine. At the time of the hearing, those criminal charges were still pending.

---

[2] This opinion addresses whether appellant "prove[d] by a preponderance of evidence that: (1) [she] was unable to comply with specific provisions of [a] court order; and (2) [she] made a good faith effort to comply with the order and the failure to comply with the order is not attributable to any fault of [hers]." TEX. FAM. CODE § 161.001(d).

Riojas, who took over the case in July 2021, said D.G. maintained "minimum contact" with the Department. Riojas met with D.G. in person three times: once for only ten minutes in August, once at the jail in December 2021, and the last time just before the January 5, 2022 termination hearing. Throughout the case, Riojas also tried to establish contact via texting or telephone calls, but D.G. responded to only one text.

Riojas said D.G.'s service plan called for random drug testing, drug and alcohol assessments and, if needed, treatment, parenting classes, a psychological evaluation, and individual counseling. She also was required to obtain a reliable source of income and stable housing. Riojas said D.G. received and signed the plan in April 2021 and received a copy again in August 2021. The plan contained contact information for the service providers. Riojas testified D.G. completed her psychological evaluation and told Riojas she completed her parenting class but had not provided Riojas with a certificate for completion of the class. D.G. told Riojas she "had jobs in line," but provided no employment verification. D.G. also told Riojas she was financially supported by her father.

During the August 10, 2021 meeting, D.G. told Riojas she would contact the service providers about beginning her services. Despite this representation, D.G. started engaging in other services the week of the January 2022 trial. Riojas never received any confirmation or notice of appointments proving D.G. started the services or that D.G. took any steps to address the drug concerns. Riojas testified that during the time of D.G.'s incarceration, the Bexar County Jail did not offer services due to COVID concerns. Riojas further testified D.G. was not in confinement when she received the plan in April 2021, and between the months of April 2021 and August 2021, she had the opportunity to engage in services, but did not.

According to Riojas, the weekly, one-hour visits between D.G. and her children were going well, but D.G. had not visited them since the end of July 2021. Riojas did not believe D.G.

provided any financial assistance to the children, she was currently living with her father, and has not obtained stable housing. Riojas admitted she had not sent D.G. for drug testing because she had not been able to stay in contact with D.G. Nothing in the case file indicated whether the previous caseworker had sent D.G. for drug testing. When asked whether D.G. could meet the physical and emotional needs of the children, Riojas replied:

> Well, I explained to mom yesterday that we have been in this case for a very long time. They [referring to both parents] haven't made any behavioral changes. There's concerns with stability. Even though they're wanting to make efforts, they haven't made any efforts throughout this whole past year. And they're [sic] still pending criminal charges on both parents. . . .

Riojas did not believe D.G. had demonstrated the ability to parent her children. If the parents' parental rights were terminated, the Department's placement plan for the children was adoption by the paternal grandparents.

### STANDARD OF REVIEW

The involuntary termination of a natural parent's rights implicates fundamental constitutional rights and "divests the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit from the parent." *In re S.J.R.-Z.*, 537 S.W.3d 677, 683 (Tex. App.—San Antonio 2017, pet. denied) (internal quotation marks omitted). "As a result, appellate courts must strictly scrutinize involuntary termination proceedings in favor of the parent." *Id.* The Department had the burden to prove, by clear and convincing evidence, both that a statutory ground existed to terminate D.G.'s parental rights and that termination was in the best interests of the children. TEX. FAM. CODE § 161.206; *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE § 101.007; *S.J.R.-Z.*, 537 S.W.3d at 683.

When reviewing the sufficiency of the evidence supporting a trial court's order of termination, we apply well-established standards of review. *See In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). To determine whether the Department presented clear and convincing evidence, a legal sufficiency review requires us to "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *Id.* at 266. We "assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *In re R.S.-T.*, 522 S.W.3d 92, 98 (Tex. App.—San Antonio 2017, no pet.). "A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *J.F.C.*, 96 S.W.3d at 266. Nevertheless, "we may not simply disregard undisputed facts that do not support the finding; to do so would not comport with the heightened burden of proof by clear and convincing evidence." *In re S.L.M.*, 513 S.W.3d 746, 748 (Tex. App.—San Antonio 2017, no pet.). If a reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then the evidence is legally sufficient. *Id.* at 747.

In contrast, in conducting a factual sufficiency review, we must review and weigh all the evidence, including the evidence that is contrary to the trial court's findings. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). We consider whether the disputed evidence is such that a reasonable factfinder could not have resolved it in favor of the challenged finding. *J.F.C.*, 96 S.W.3d at 266. The evidence is factually insufficient only if "in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction." *Id.*

In both legal and factual sufficiency review, the trial court, as factfinder, is the sole judge of the weight and credibility of the evidence. *In re A.F.*, No. 04-20-00216-CV, 2020 WL 6928390, at *2 (Tex. App.—San Antonio Nov. 25, 2020, no pet.) (mem. op.). We must defer to the

factfinder's resolution of disputed evidentiary issues and cannot substitute our judgment for that of the factfinder. *See, e.g., In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam) (factual sufficiency); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (legal sufficiency).

## STATUTORY TERMINATION GROUNDS

In three issues on appeal, D.G. challenges the legal and factual sufficiency of the evidence to support the trial court's predicate findings pursuant to subsections (N), (O), and (P) of section 161.001(b)(1). She does not challenge the best-interest finding. In general, assuming a best interest finding, only one predicate ground under section 161.001(b)(1) is sufficient to support a judgment of termination. *A.V.*, 113 S.W.3d at 362; *In re A.R.R.*, No. 04-18-00578-CV, 2018 WL 6517148, at *1 (Tex. App.—San Antonio Dec. 12, 2018, pet. denied) (mem. op.); *In re D.J.H.*, 381 S.W.3d 606, 611-12 (Tex. App.—San Antonio 2012, no pet.). Therefore, to be successful on appeal, an appellant must challenge all the predicate grounds upon which a trial court based its termination order. *S.J.R.-Z.*, 537 S.W.3d at 682.

To terminate parental rights under section 161.001(b)(1)(O), the trial court must find, by clear and convincing evidence, that the parent "failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the [Department] for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child." TEX. FAM. CODE § 161.001(b)(1)(O). Substantial compliance is not enough to avoid a termination finding under section 161.001(O). *In re C.A.*, No. 04-15-00582-CV, 2016 WL 805550, at *5 (Tex. App.—San Antonio Mar. 2, 2016, pet. denied) (mem. op.). Nevertheless, "[a] court may not order termination under Subsection (b)(1)(O) based on the failure by the parent to comply with a specific provision of a court order if a parent proves by a preponderance of evidence that: (1) the parent was unable to comply with specific

provisions of the court order; and (2) the parent made a good faith effort to comply with the order and the failure to comply with the order is not attributable to any fault of the parent." TEX. FAM. CODE § 161.001(d).

On appeal, DG contends she did not have time to complete her services in the five months between her reviewing the plan in August 2021 and the January termination hearing. DG also argues she had less time to comply, in part, because services were not offered during the period of her incarceration. There is no dispute DG failed to complete many requirements of her court-ordered family service plan. She was aware of the plan in April 2021 and, since that time, completed only her psychological evaluation, maintained "minimum contact" with the Department, stopped visits with her children in July 2021, and did not begin other services until the week of the January 2022 trial. Although she was incarcerated for a portion of this time, no evidence was adduced at trial about the specific dates of DG's incarceration. We do not know whether confinement lasted a few days or weeks or several months. Nevertheless, DG had approximately nine months-from the date she was aware of the April 2021 service plan to the date of the January 5, 2022 termination hearing-to complete her services. There is no evidence of her inability to, at a minimum, begin compliance with the service plan while she was not incarcerated. *See In re V.B.*, No. 02-17-00318-CV, 2018 WL 771976, at \*4 (Tex. App.—Fort Worth Feb. 8, 2018, no pet.) (mem. op.) (during six-month period mother had to complete her service plan, she did nothing to address the Department's main concern—her continued abuse of drugs; court acknowledged "that during this time Mother experienced the death of her mother and her son's hospitalization, [but] even prior to these unfortunate events, she had done nothing about her drug problem"; "Mother's assertion that she was at a disadvantage due to her incarceration during part of that time is of no avail, either, as it also does not explain her failure to act upon release.").

After reviewing the evidence under the appropriate standards of review, we conclude D.G. did not prove by a preponderance of evidence that: (1) she was unable to comply with specific provisions of the court order; and (2) she made a good faith effort to comply with the order and the failure to comply with the order is not attributable to any fault on her part. *See* TEX. FAM. CODE § 161.001(d). We also conclude a factfinder could reasonably have formed a firm belief or conviction that D.G. failed to comply with all the terms of a court-ordered service plan. We therefore hold legally and factually sufficient evidence supports the trial court's finding that D.G. violated section 161.001(b)(1)(O), and overrule her arguments to the contrary.

## CONCLUSION

Because there is legally and factually sufficient evidence of at least one predicate ground supporting termination, we affirm the trial court's Order of Termination.

Lori I. Valenzuela, Justice