

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-22-00718-CV

**IN THE INTEREST OF J.C.M. AND R.M.**, Children

From the 37th Judicial District Court, Bexar County, Texas
Trial Court No. 2021-PA-00503
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:    Lori I. Valenzuela, Justice

Sitting:        Rebeca C. Martinez, Chief Justice
               Luz Elena D. Chapa, Justice
               Lori I. Valenzuela, Justice

Delivered and Filed: March 15, 2023

AFFIRMED

M.G. appeals the trial court's order terminating her parental rights to her children J.C.M. (born 2013) and R.M. (born 2015).[1] M.G. argues the evidence is legally and factually insufficient to support the trial court's finding that termination is in the best interests of her children. We affirm.

### BACKGROUND

On March 24, 2021, the Texas Department of Family and Protective Services removed J.C.M. and R.M. from M.G.'s care due to allegations of domestic violence and drug use by both parents. The Department obtained temporary managing conservatorship over the children, placed them in a foster home, and filed a petition to terminate M.G.'s parental rights. The Department

---

[1] To protect the privacy of the minor children, we use initials to refer to the children and their biological parents. TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

also created a family service plan requiring M.G. to, inter alia, attend individual therapy, undergo a drug assessment and treatment evaluation, refrain from illegal drug use and alcohol abuse, submit to random drug testing, and participate in a parenting class as a condition of reunification. The Department ultimately pursued termination of M.G.'s parental rights.

On September 9, 2022, and October 6, 2022, the trial court held a two-day bench trial. The trial court heard testimony from three witnesses: (1) the Department's caseworker, Demetrius Knighton; (2) M.G.; and (3) the children's father, S.M. After the conclusion of trial, the court signed an order terminating M.G.'s parental rights pursuant to section 161.001(b)(1)(N), (O) and (P) and its finding that termination of M.G.'s parental rights was in the best interests of the children. M.G. appealed.

## ANALYSIS

M.G. challenges the legal and factual sufficiency of the evidence on which the trial court relied to conclude that termination was in the best interests of the children.

### *Standard of Review*

The involuntary termination of a natural parent's rights implicates fundamental constitutional rights and "divests the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit from the parent." *In re S.J.R.-Z.*, 537 S.W.3d 677, 683 (Tex. App.—San Antonio 2017, pet. denied) (internal quotation marks omitted). "As a result, appellate courts must strictly scrutinize involuntary termination proceedings in favor of the parent." *Id.* The Department had the burden to prove, by clear and convincing evidence, both that a statutory ground existed to terminate M.G.'s parental rights and that termination was in the best interests of the children. TEX. FAM. CODE § 161.206; *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth

of the allegations sought to be established." TEX. FAM. CODE § 101.007; *In re S.J.R.-Z.*, 537 S.W.3d at 683.

When reviewing the sufficiency of the evidence supporting a trial court's order of termination, we apply well-established standards of review. *See In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). To determine whether the Department presented clear and convincing evidence, a legal sufficiency review requires us to "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *Id.* at 266. We "assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *In re R.S.-T.*, 522 S.W.3d 92, 98 (Tex. App.—San Antonio 2017, no pet.). "A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *In re J.F.C.*, 96 S.W.3d at 266. Nevertheless, "we may not simply disregard undisputed facts that do not support the finding; to do so would not comport with the heightened burden of proof by clear and convincing evidence." *In re S.L.M.*, 513 S.W.3d 746, 748 (Tex. App.—San Antonio 2017, no pet.). If a reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then the evidence is legally sufficient. *Id.* at 747.

In contrast, in conducting a factual sufficiency review, we must review and weigh all the evidence, including the evidence that is contrary to the trial court's findings. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). We consider whether the disputed evidence is such that a reasonable factfinder could not have resolved it in favor of the challenged finding. *In re J.F.C.*, 96 S.W.3d at 266. The evidence is factually insufficient only if "in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction." *Id.*

In both legal and factual sufficiency review, the trial court, as factfinder, is the sole judge of the weight and credibility of the evidence. *In re M.G.*, No. 04-20-00216-CV, 2020 WL 6928390, at *2 (Tex. App.—San Antonio Nov. 25, 2020, no pet.) (mem. op.). We must defer to the factfinder's resolution of disputed evidentiary issues and cannot substitute our judgment for that of the factfinder. *See, e.g., In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam) (factual sufficiency); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (legal sufficiency).

### *Best Interests*

### *Applicable Law*

M.G. challenges the legal and factual sufficiency of the trial court's order that termination of her parental rights was in the best interests of J.C.M. and R.M. There is a strong presumption that a child's best interest is served by maintaining the relationship between a child and the natural parent, and the Department has the burden to rebut that presumption by clear and convincing evidence. *See, e.g., In re R.S.-T.*, 522 S.W.3d at 97. To determine whether the Department satisfied this burden, the Texas Legislature has provided several factors[2] for courts to consider regarding a parent's willingness and ability to provide a child with a safe environment, and the Texas Supreme

---

[2] These factors include, inter alia: "(1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills [. . .]; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child." TEX. FAM. CODE § 263.307(b).

Court has provided a similar list of factors[3] to determine a child's best interest. TEX. FAM. CODE § 263.307(b); *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

A best interest finding, however, does not require proof of any particular factors. *See In re G.C.D.*, No. 04-14-00769-CV, 2015 WL 1938435, at *5 (Tex. App.—San Antonio Apr. 29, 2015, no pet.) (mem. op.). Neither the statutory factors nor the *Holley* factors are exhaustive, and "[e]vidence of a single factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest." *In re J.B.-F.*, No. 04-18-00181-CV, 2018 WL 3551208, at *3 (Tex. App.—San Antonio July 25, 2018, pet. denied) (mem. op.). "A trier of fact may measure a parent's future conduct by his past conduct [in] determin[ing] whether termination of parental rights is in the child's best interest." *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). Finally, drug use can destabilize the home and expose children to physical and emotional harm if not resolved. *See, e.g., In re K.J.G.*, 2019 WL 3937278, at *8 (Tex. App.—San Antonio Aug. 21, 2019, pet denied). Evidence that proves a statutory ground for termination is also probative on the issue of best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002).

*Application*

The Department initiated this case due to concerns about allegations of domestic violence and both parents' alleged drug use. On appeal, M.G. argues this is not a case involving extreme family violence or out of control drug use, and she simply needs to re-establish a relationship with

---

[3] Those factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist those individuals to promote the best interest of the child; (6) the plans for the child by these individuals or the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

her children. She contends the Department failed to provide sufficient evidence to justify termination of her parental rights based on the best interests of the children.

The Department's caseworker, Knighton, testified M.G. was largely in compliance with her service plan; however, hair follicle tests administered during the proceeding resulted in positive results for methamphetamines in all but one instance. M.G.'s only clean hair follicle test occurred shortly after her discharge from inpatient drug rehabilitation (on June 22, 2022). However, M.G. tested positive for methamphetamines on August 18, 2021; January 11, 2022; March 24, 2022; August 31, 2022; and September 12, 2022. M.G. also refused testing on February 11, 2022. *See In re K.C.B.*, 280 S.W.3d 888, 895 (Tex. App.—Amarillo 2009, pet. denied) ("The trial court may infer from a refusal to take a drug test that appellant was using drugs."). The trial court could have disbelieved M.G.'s testimony that she was sober and did not know how she continued to test positive for methamphetamines as well as her suggestion that her hair follicle tests were returning positive because she was around people who use them. Because drug use can destabilize the home and expose children to physical and emotional harm if not resolved, its use weighs in favor of termination. *See, e.g., In re K.J.G.*, 2019 WL 3937278, at *8 (Tex. App.—San Antonio Aug. 21, 2019, pet denied).

Because M.G.'s service plan required drug testing and abstinence from drug use and alcohol abuse, her continued use of methamphetamines (and abuse of alcohol) violated the terms of her service plan. The trial court terminated on subsection (O) and (P) grounds. *See* TEX. FAMILY CODE § 161.001(b)(1)(O) (failure to comply with court-ordered service plan), (b)(1)(P)(ii) (continued use of controlled substances). M.G.'s failure to comply with her service plan and continued methamphetamine use further supports a finding that termination was in the best interests of the children. *See In re S.B.*, 207 S.W.3d 877, 888 (Tex. App.—Fort Worth 2006, no pet.).

The trial court also considered evidence that M.G. could not provide for the children's physical and emotional well-being. At the time of trial, appellant was living with her aunt; had difficulty securing housing for herself; and, by her own testimony, was "on again off again" with respect to her employment. *See In re M.L.C.*, No. 04-17-00459-CV, 2017 WL 6597828, at *6 (Tex. App.—San Antonio Dec. 27, 2017, pet. denied) (lack of stable employment and housing supports finding that parent cannot provide for child's physical and emotional well-being).

Moreover, when the children came into the custody of the Department, their developmental delays were significant. Knighton testified that the children were reading at a "Pre-K" level. Although at the time of trial they remained developmentally delayed, the children's foster parents have accessed special education services through the school to close the gap. The caseworker testified that he expected the children would be developmentally on track within a year if they remained with their foster parents.

The children's foster parents have offered a stable and nurturing environment, and the children have bonded with their foster parents. At the time of trial, the foster parents had raised the children for over one-and-a-half years, and they expressed a desire to adopt the children. That the children are thriving in their current placement in a stable and nurturing environment with a planned adoption further supports the trial court's finding that termination is in the children's best interests. *See In re A.M.M.*, No. 04-19-00806-CV, 2020 WL 2139308, at *4 (Tex. App.—San Antonio May 6, 2020, pet. denied).

After reviewing the evidence under the appropriate standards of review, we conclude a reasonable factfinder could have formed a firm belief or conviction that termination of M.G.'s parental rights was in the best interests of J.C.M. and R.M. *In re J.F.C.*, 96 S.W.3d at 266. We therefore hold legally and factually sufficient evidence supports the trial court's best interest finding, and we overrule M.G.'s arguments to the contrary.

## CONCLUSION

We affirm the trial court's order of termination.

Lori I. Valenzuela, Justice