

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00695-CV

**IN THE INTEREST OF M.A.M, M.X.M., AND M.J.M.**, Children

From the 224th Judicial District Court, Bexar County, Texas
Trial Court No. 2023PA00975
Honorable Raul Perales, Judge Presiding

Opinion by:     Lori I. Valenzuela, Justice

Sitting:        Irene Rios, Justice
                Lori I. Valenzuela, Justice
                Velia J. Meza, Justice

Delivered and Filed: March 19, 2025

AFFIRMED

Mother appeals the trial court's order terminating her parental rights to her children, M.A.M. (born 2011), M.X.M. (born 2013), and M.J.M. (born 2021).[1] In two appellate issues, Mother argues the evidence is legally and factually insufficient to support the trial court's termination findings under Texas Family Code section 161.001(b)(1)(D) and (O). Mother does not challenge the trial court's finding that termination was in the children's best interest. We affirm.

---

[1] To protect the privacy of the minor children, we use initials to refer to the children; we refer to the children's biological parents as Mother and Father. TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

**BACKGROUND**

On June 27, 2023, the Texas Department of Family and Protective Services (the "Department") filed its original petition to terminate Mother and Father's parental rights to M.A.M, M.X.M., and M.J.M.[2] The Department created a service plan that required Mother to, among other things, participate in drug testing and drug counseling, individual counseling, and a parenting course; engage in a psychological evaluation and visitation; and provide proof of employment and stable and appropriate housing. The Department ultimately pursued termination of Mother's parental rights.

A bench trial commenced on June 4, 2024, approximately a year after the children's removal, and continued on August 26, 2024. During the trial, the trial court heard testimony from seven witnesses: (1) the Department's investigator, David Lopez; (2) the first Department caseworker assigned to the case, Benito Marquez; (3) the second Department caseworker assigned to the case, Krista Kelley; (4) the Court Appointed Special Advocate ("Advocate"); (5) the children's aunt and current placement ("Aunt"); (6) Mother's mother ("Grandmother"); and (7) Mother. After the trial, the court signed an order terminating Mother's parental rights pursuant to section 161.001(b)(1)(D) and (O) and found that termination of Mother's parental rights was in the best interest of the children.

On appeal, Mother challenges the legal and factual sufficiency of the evidence supporting the trial court's order terminating her rights pursuant to subsections (D) and (O).

---

[2] During trial, Father voluntarily relinquished his parental rights to all three children and is not a party to this appeal. Therefore, we only recite the facts relevant to Mother's appellate issues and necessary for our disposition. *See* TEX. R. APP. P. 47.1.

**STANDARD OF REVIEW**

The involuntary termination of a natural parent's rights implicates fundamental constitutional rights and "divests the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit from the parent." *In re S.J.R.-Z.*, 537 S.W.3d 677, 683 (Tex. App.—San Antonio 2017, pet. denied) (internal quotation marks omitted). "As a result, appellate courts must strictly scrutinize involuntary termination proceedings in favor of the parent." *Id.* The Department has the burden to prove, by clear and convincing evidence, both that a statutory ground existed to terminate Mother's parental rights, and that termination was in the best interest of the children. TEX. FAM. CODE § 161.206; *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE § 101.007; *In re S.J.R.-Z.*, 537 S.W.3d at 683. Because Mother does not challenge the trial court's finding that termination was in the children's best interest, we focus our analysis on the statutory grounds presented in the trial court's order. *See* TEX. R. APP. P. 47.1.

When reviewing the sufficiency of the evidence supporting a trial court's order of termination, we apply well-established standards of review. *See In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). To determine whether the Department presented clear and convincing evidence, a legal sufficiency review requires us to "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *Id.* at 266. We "assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *In re R.S.-T.*, 522 S.W.3d 92, 98 (Tex. App.—San Antonio 2017, no pet.). "A corollary to this requirement is that a court should

disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *In re J.F.C.*, 96 S.W.3d at 266. Nevertheless, "we may not simply disregard undisputed facts that do not support the finding; to do so would not comport with the heightened burden of proof by clear and convincing evidence." *In re S.L.M.*, 513 S.W.3d 746, 748 (Tex. App.—San Antonio 2017, no pet.). If a reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then the evidence is legally sufficient. *Id*. at 747.

In contrast, in conducting a factual sufficiency review, we must review and weigh all the evidence, including the evidence that is contrary to the trial court's findings. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). We consider whether the disputed evidence is such that a reasonable factfinder could not have resolved it in favor of the challenged finding. *In re J.F.C.*, 96 S.W.3d at 266. The evidence is factually insufficient only if "in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction." *Id.*

In both legal and factual sufficiency review, the trial court, as factfinder, is the sole judge of the weight and credibility of the evidence. *In re A.F.*, No. 04-20-00216-CV, 2020 WL 6928390, at *2 (Tex. App.—San Antonio Nov. 25, 2020, no pet.) (mem. op.). We must defer to the factfinder's resolution of disputed evidentiary issues and cannot substitute our judgment for that of the factfinder. *See, e.g.*, *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam) (factual sufficiency); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (legal sufficiency).

As Mother does not challenge the trial court's finding that termination was in the best interest of the children, if either of the predicate grounds for termination found in the trial court's order is supported by legally and factually sufficient evidence, we will affirm the trial court's order. *See In re A.L.S.*, 660 S.W.3d 257, 263 (Tex. App.—San Antonio 2022, pet. denied) ("Where, as

here, the trial court terminates a parent's rights on multiple predicate grounds, we may generally affirm on any one ground.").

## APPLICABLE LAW AND ANALYSIS

We first examine Mother's challenge to the trial court's finding under subsection (D). *See* TEX. FAM. CODE § 161.001(b)(1)(D). Subsection (D) allows a trial court to terminate parental rights if it finds by clear and convincing evidence that the parent has "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." *Id.* Under this predicate ground, the trial court examines "evidence related to the environment of the children to determine if the environment was the source of endangerment to the children's physical or emotional well-being." *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). "Environment" refers to the acceptability of the child's living conditions and a parent's conduct in the home. *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). "A child is endangered when the environment creates a potential for danger that the parent is aware of but consciously disregards." *Id*. A parent does not need to know for certain that the child is in an endangering environment. *In re R.S.-T.*, 522 S.W.3d at 109. Awareness of the potential for danger is sufficient. *Id.* The relevant period for review of the environment supporting termination under subsection (D) is before the Department removes the child. *In re J.W.*, 645 S.W.3d 726, 749 (Tex. 2022) ("The suitability of a child's living conditions and the conduct of parents or others in the home are relevant to a Subsection (D) inquiry.").

Turning to Mother's specific arguments, she contends the evidence presented at trial is legally and factually insufficient to establish she knew or had any reason to know the children may

be in danger. Mother posits that the evidence presented by the Department is not clear and convincing but rather "vague and conclusory at best." We disagree.

At trial, in addition to admitting seven exhibits—including Mother's service plan—the trial court heard the following testimony from the seven witnesses.

First, Lopez testified that the circumstances that led to the Department's removal in this case was "active and ongoing domestic violence, noncooperation by [Mother], and concerns for mental health on both sides for both [parents]." He also testified: that Mother engaged with him in his role with the Department, and that the children appeared to be "ok" when removed; and that Father admitted to assaulting Mother, which resulted in visible injuries to Mother, and that, as a result of Father's conduct, Father had been charged with aggravated assault with a deadly weapon.

Second, Marquez, who was the Department caseworker assigned to the case when the children were removed and until April 5, 2024, testified that Mother's service plan required her to, among other things, engage in parenting classes, a drug assessment, a psycho-social evaluation, counseling, a psychological evaluation, visitation, a domestic violence class, and provide proof of stable housing and employment. During his time on the case, Mother was working towards completing most of her services and was attending all her allowed visitations with the children without concern. Marquez told the court that one of the children, M.A.M., did not want to attend the visits with Mother. Marquez further testified that Mother submitted to drug testing but would not participate in hair follicle testing due to her religious beliefs and that both parents had to make progress in their individual counseling before they began couples counseling. According to Marquez, Mother never made sufficient progress in her individual counseling. Marquez also explained that despite domestic violence in the home, Mother remained married to Father, and Mother continued to live with Father after he assaulted her. Regarding placement of the children,

M.A.M. was placed with a maternal aunt and uncle, and M.X.M. and M.J.M. were with their paternal grandparents. Marquez told the court that all three children were doing well in their current placements. Finally, Marquez testified that he did not believe the children's reunification with Mother was appropriate as Mother and Father are first cousins, and their relationship was relevant to whether or not the Department would be seeking reunification. *See* TEX. PENAL CODE § 25.02(a)(6) (criminalizing sexual intercourse between first cousins).

Third, Kelley, the caseworker assigned to the case after Marquez's departure in April, was next to take the stand. At that time, Mother and Father were still living together. Regarding Mother's requirement to attend individual therapy, Kelley testified that Mother attended a few individual therapy sessions; however, she was discharged in May 2024 due to absences, and despite the Department explaining the importance of therapy to be reunified with her children, Mother did not otherwise complete individual therapy and told the Department that she would not complete therapy until after the conclusion of the underlying case. Kelley also testified that Mother had continued to visit the children during the case and, while there were originally no concerns with the visits, the Department had stopped the visits because Mother was "overly questioning" one of the children about the current placement. When questioned by Mother's counsel, Kelley did say that it would be hard for Mother to ask the children about their day-to-day activities without discussing the placement. Related to Mother's remaining services, just like Marquez, Kelley testified that Mother had not provided proof of employment, Mother lives with grandmother—who has an open family-based social services case due to an assault in the home injuring a child—and that Grandmother's home is not an appropriate placement for the children. While there were initially concerns with the results of one of Mother's drug tests, it was later confirmed by the Department that the concerning results could have been caused by medication prescribed to Mother

by her doctor. As for the children's state when they entered the Department's care, Kelly testified that M.J.M. was malnourished when she came into the Department's care and had chipped teeth and that M.X.M. had anger issues prior to removal but that those issues had improved. Finally, Kelley told the trial court that Mother had not made the necessary changes to address the concerns that led to removal, including by providing a safe and stable environment for the children.

Fourth, the Advocate testified: that Mother admitted she understood what happened between her and Father was wrong, but she was willing to do what needed to be done to get her children back; M.A.M. does not want to visit Mother, is doing very well in school, said this wasn't the first time this happened, wants to move on, and that requiring him to reengage with his parents would disrupt his progress; M.X.M. did not want to return to living with Mother; and that M.J.M. is too young to express her desires. The Advocate echoed Kelley's testimony that Mother had not addressed the reasons for removal and could not provide stability for the children. Ultimately, the Advocate recommended the termination of Mother's parental rights.

Fifth, Aunt testified that the children had improved in their emotional intelligence since the beginning of the case, that she was willing to care for the children long-term, and that termination would be in the children's best interest.[3] Aunt also testified that Mother has been violent with her by verbally assaulting her outside the courtroom after a previous hearing. Aunt described the alleged verbal assault as Mother "yelling at me to my back as I was walking away;" however, Grandmother, who was the trial's sixth witness, disputed this event.

Mother closed the trial as the seventh and final witness. Regarding her employment status, Mother testified that she had been doing flexible, independent contracting work for Pepsi but had not provided any information to the Department caseworker. As for her counseling, Mother

---

[3] Aunt additionally testified that law enforcement had been called to her house because of this case based on received hotline calls but found no concerns.

testified that she attended church counseling and a women's prayer group; however, she admitted that she knew that those activities did not meet the Department's required individual therapy in her service plan. On the topic of counseling, Mother told the court that when she was attending counseling with the Department therapist, she "thought it was going to go good, and then it turned out [the therapist] wasn't even doing any type of therapy with me" and that the therapist was "[b]labbing about things that I felt were not important." Pertinent to her relationship with Father, Mother testified that she and Father were not together anymore and that it was her intention to testify against him in his criminal trial. As for her current housing, Mother testified that she was aware of the current issues with Grandmother's residence, but she was "thinking about looking" for her own place to live. Mother concluded that she believed she had addressed all the issues that started the case.

After reviewing the evidence under the appropriate standards of review, we conclude that a factfinder could have reasonably formed a firm belief or conviction that Mother knowingly allowed the children to remain in conditions and surroundings that endangered the physical or emotional well-being of the children (e.g., continuing to engage in a relationship with Father despite Father committing domestic violence against her and continuing to reside in a home that is unfit for children). *See In re B.N.D.*, No. 04-21-00286-CV, 2021 WL 6127883, at *4 (Tex. App.—San Antonio Dec. 29, 2021, no pet.) (mem. op.) ("Mother's lack of stable housing and a consistent home environment exposed the children to a life of uncertainty and instability that endangers the children's physical and emotional well-being."); *In re C.M.W.*, No. 01-02-00474-CV, 2003 WL 579794, at *3 (Tex. App.—Houston [1st Dist.] Feb. 27, 2003, no pet.) (mem. op.) (holding evidence sufficient under subsection (D) based, in part, on testimony that mother "did not obtain stable housing or employment despite agency assistance on both fronts and the

understanding that these factors were critical to the children's return"). Moreover, as detailed above, each witness provided a factual basis to support their testimony. *See City of San Antonio v. Pollock*, 284 S.W.3d 809, 818 (Tex. 2009) ("[I]f no basis for the opinion is offered, or the basis offered provides no support, the opinion is merely a conclusory statement and cannot be considered probative evidence, regardless of whether there is no objection."); *see also, e.g.*, *In re K.M.J.*, No. 04-18-00727-CV, 2019 WL 1459565, at *6 (Tex. App.—San Antonio Apr. 3, 2019, pet. denied) (mem. op.) (finding testimony conclusory where it was based on mere "thought" and "belief" that drugs "may" have been present in the home). Differing views on the witnesses' testimony do not render the evidence conclusory; rather, the judge is the sole judge of the weight and credibility of the testimonial evidence. *In re J.F.C.*, 96 S.W.3d at 266–67; *In re J.W.*, 645 S.W.3d at 744 (noting the deference given to the fact finder's "resolution of conflicts in the evidence, including witness credibility"). Accordingly, we overrule Mother's first issue.

After review of the record before us, we hold there is sufficient legal and factual evidence to uphold the trial court's order terminating Mother's rights pursuant to subsection (D). We need not address Mother's argument relating to subsection (O). *See In re A.L.S.*, 660 S.W.3d at 263; *In re A.V.*, 113 S.W.3d at 362; *In re D.J.H.*, 381 S.W.3d 606, 611–12 (Tex. App.—San Antonio 2012, no pet.); TEX. R. APP. P. 47.1.

## CONCLUSION

We affirm the trial court's order of termination.

Lori I. Valenzuela, Justice