

## Fourth Court of Appeals
### San Antonio, Texas

### MEMORANDUM OPINION

No. 04-22-00405-CV

**IN THE INTEREST OF J.J.V.M.M.**, a Child

From the 225th Judicial District Court, Bexar County, Texas
Trial Court No. 2021PA01147
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:     Lori I. Valenzuela, Justice

Sitting:        Irene Rios, Justice
                Beth Watkins, Justice
                Lori I. Valenzuela, Justice

Delivered and Filed: December 7, 2022

AFFIRMED

T.S. appeals the trial court's order terminating her parental rights to her child J.J.V.M.M. (born 2018).[1] T.S. argues the evidence is legally and factually insufficient to support the trial court's findings under Texas Family Code section 161.001(b)(1)(D) and (E), and its finding that termination is in the best interest of J.J.V.M.M. We affirm the trial court's order.

### BACKGROUND

In June 2021, the Texas Department of Family and Protective Services removed J.J.V.M.M. from T.S.'s care because of concerns that T.S. was using and selling methamphetamines out of the home where J.J.V.M.M. resided; neglectful supervision; and T.S.'s

---

[1] To protect the privacy of the minor child, we use initials to refer to the child and his biological parents. TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

positive drug test for amphetamines and methamphetamines. The Department obtained temporary managing conservatorship over J.J.V.M.M. and filed a petition to terminate T.S.'s parental rights. The Department also created a family service plan requiring T.S. to, inter alia, obtain and maintain legal income, submit to random drug testing, complete a drug assessment, complete a psychological evaluation, engage in individual therapy, and complete parenting classes as a condition of reunification. The Department ultimately pursued termination of T.S.'s parental rights.

Approximately one year after removal, the trial court held a one-day bench trial at which T.S. failed to appear. The trial court heard testimony from five witnesses: (1) Department caseworker Maria Arroyo; (2) Detective Francisco Vasquez of the San Antonio Police Department; (3) investigator Christina Dawson; (4) Department caseworker Kristen Torres; and (5) the child's father, T.M. At the conclusion of trial, the court signed an order terminating T.S.'s parental rights pursuant to section 161.001(b)(1)(D), (E), (O), and (P) and its finding that termination of T.S.'s parental rights was in the child's best interest. T.S. appealed.

## ANALYSIS

T.S. challenges not only the legal and factual sufficiency of the evidence supporting the trial court's findings under section 161.001(b)(1)(D) and (E), but also the legal and factual sufficiency of the evidence on which the trial court relied to conclude that termination was in the best interest of J.J.V.M.M.

### *Standard of Review*

The involuntary termination of a natural parent's rights implicates fundamental constitutional rights and "divests the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit from the parent." *In re S.J.R.-Z.*, 537 S.W.3d 677, 683 (Tex. App.—San Antonio 2017, pet. denied) (internal quotation

marks omitted). "As a result, appellate courts must strictly scrutinize involuntary termination proceedings in favor of the parent." *Id.* The Department had the burden to prove, by clear and convincing evidence, both that a statutory ground existed to terminate T.S.'s parental rights and that termination was in the best interest of the child. TEX. FAM. CODE § 161.206; *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE § 101.007; *In re S.J.R.-Z.*, 537 S.W.3d at 683.

When reviewing the sufficiency of the evidence supporting a trial court's order of termination, we apply well-established standards of review. *See In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). To determine whether the Department presented clear and convincing evidence, a legal sufficiency review requires us to "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *Id.* at 266. We "assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *In re R.S.-T.*, 522 S.W.3d 92, 98 (Tex. App.—San Antonio 2017, no pet.). "A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *In re J.F.C.*, 96 S.W.3d at 266. Nevertheless, "we may not simply disregard undisputed facts that do not support the finding; to do so would not comport with the heightened burden of proof by clear and convincing evidence." *In re S.L.M.*, 513 S.W.3d 746, 748 (Tex. App.—San Antonio 2017, no pet.). If a reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then the evidence is legally sufficient. *Id.* at 747.

In contrast, in conducting a factual sufficiency review, we must review and weigh all the evidence, including the evidence that is contrary to the trial court's findings. *In re J.O.A.*, 283

S.W.3d 336, 345 (Tex. 2009). We consider whether the disputed evidence is such that a reasonable factfinder could not have resolved it in favor of the challenged finding. *In re J.F.C.*, 96 S.W.3d at 266. The evidence is factually insufficient only if "in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction." *Id.*

In both legal and factual sufficiency review, the trial court, as factfinder, is the sole judge of the weight and credibility of the evidence. *In re A.F.*, No. 04-20-00216-CV, 2020 WL 6928390, at *2 (Tex. App.—San Antonio Nov. 25, 2020, no pet.) (mem. op.). We must defer to the factfinder's resolution of disputed evidentiary issues and cannot substitute our judgment for that of the factfinder. *See, e.g., In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam) (factual sufficiency); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (legal sufficiency).

### Statutory Termination Grounds

#### Applicable Law

In her first and second arguments on appeal, T.S. challenges the legal and factual sufficiency of the evidence to support the trial court's predicate findings. When, as here, the trial court terminates a parent's rights on multiple predicate grounds, we may affirm on any one ground. *In re A.V.*, 113 S.W.3d at 362; *In re D.J.H.*, 381 S.W.3d 606, 611–12 (Tex. App.—San Antonio 2012, no pet.).

In general, assuming a best interest finding, only one predicate ground under section 161.001(b)(1) is sufficient to support a judgment of termination. *In re A.V.*, 113 S.W.3d at 362; *In re A.R.R.*, No. 04-18-00578-CV, 2018 WL 6517148, at *1 (Tex. App.—San Antonio Dec. 12, 2018, pet. denied) (mem. op.). To be successful on appeal, an appellant must challenge all the predicate grounds upon which a trial court based its termination order. *In re S.J.R.-Z.*, 537 S.W.3d at 682. When an appellant does not challenge all the grounds that may support an order of

termination, we typically do not address the sufficiency of the evidence of any of the predicate grounds for termination. *See In re A.V.*, 113 S.W.3d at 361–62; *In re S.J.R.-Z.*, 537 S.W.3d at 682. Instead, we must accept the validity of the unchallenged grounds and affirm the termination order. *See In re A.V.*, 113 S.W.3d at 361–62; *In re S.J.R.-Z.*, 537 S.W.3d at 682.

However, because termination under subsection 161.001(b)(1)(D) or (E) may have implications for a parent's parental rights to other children, appellate courts are instructed to address issues challenging a trial court's findings under those subsections. *In re N.G.*, 577 S.W.3d 230, 236–37 (Tex. 2019). Therefore, we will consider T.S.'s sufficiency argument as to subsections (D) and (E) even though she does not challenge termination under subsections (O) and (P). *See In re L.C.*, No. 12-19-00137-CV, 2019 WL 4727826, at *2 (Tex. App.—Tyler Sept. 27, 2019, no pet.) (mem. op.) (addressing parents' sufficiency challenges to subsections (D) and (E) even though they did not challenge all grounds upon which termination could be supported). We consolidate our analysis as to both statutory grounds because the evidence concerning those two grounds is interrelated. *See In re J.T.G.*, 121 S.W.3d 117, 126 (Tex. App.—Fort Worth 2003, no pet.).

Subsection (D) allows a trial court to terminate parental rights if it finds by clear and convincing evidence that the parent has "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." TEX. FAM. CODE § 161.001(b)(1)(D). Under subsection (D), the trial court examines "evidence related to the environment of the children to determine if the environment was the source of endangerment to the children's physical or emotional well-being." *In re J.T.G.*, 121 S.W.3d at 125. "Environment" refers to the acceptability of the child's living conditions and a parent's conduct in the home. *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). "A child is endangered when the environment creates a potential for danger that the parent

is aware of but consciously disregards." *Id*. A parent does not need to know for certain that the child is in an endangering environment. *In re R.S.-T.*, 522 S.W.3d at 109. Awareness of a potential for danger is sufficient. *Id.*

Subsection (E) allows a trial court to terminate a parent's rights if it finds by clear and convincing evidence that the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE § 161.001(b)(1)(E). Under subsection (E), the trial court determines whether there is evidence that a parent's acts, omissions, or failures to act endangered the child's physical or emotional well-being. *See In re J.T.G.*, 121 S.W.3d at 125. "It is not necessary that the parent's conduct be directed at the child or that the child actually be injured; rather, a child is endangered when the environment or the parent's course of conduct creates a potential for danger which the parent is aware of but disregards." *In re S.M.L.*, 171 S.W.3d 472, 477 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

*Application*

With respect to subsection (D), T.S. argues that the evidence was legally and factually insufficient to support termination because "[m]uch of the evidence presented at trial concerned the gunshot wound to J.J.V.M.M.'s foot while the suit was pending." However, contrary to T.S.'s argument, the Department presented additional, pre-removal evidence at trial bearing on subsection (D).

Arroyo testified the case originally came to the Department's attention in August 2020 because of concerns T.S. was "using and selling methamphetamines out of the home where [J.J.V.M.M.] was residing." In September 2020, T.S. left J.J.V.M.M.—then under two years old—unattended in a dangerous area of the neighborhood where there had been recent shootings. In

December 2020, J.J.V.M.M. was admitted to the hospital with respiratory distress;[2] that same day, T.S. had chemical burns, gave inconsistent stories, and there were concerns she was under the influence of methamphetamines. In March 2021, T.S. was admitted to the hospital with hallucinations; tested positive for methamphetamines and marijuana; and admitted to using methamphetamines, ecstasy, and marijuana. The Department removed J.J.V.M.M. after T.S. tested positive for amphetamines and methamphetamines in April 2021. After removal, the child was placed with his maternal aunt, J.D.

After reviewing the evidence under the appropriate standards of review, we conclude that a factfinder could reasonably have formed a firm belief or conviction that T.S. knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child. We therefore hold legally and factually sufficient evidence supports the trial court's finding that termination was warranted under section 161.001(b)(1)(D), and overrule T.S.'s arguments to the contrary.

T.S. further argues there is legally and factually insufficient evidence to support termination under subsection (E) because "no evidence was presented [T.S.] knew or had reason to know there was a gun in the home." We disagree. In September 2021, J.D. asked T.S. to take J.J.V.M.M. for a few days. Although T.S. was not allowed possession of the child at the time, she nevertheless took him for three days. On the third day, the child shot himself with a gun. Vasquez—the SAPD detective responsible for investigating J.J.V.M.M.'s suspected gunshot wound—testified, based on his conversations with T.S, that J.J.V.M.M was "taking a bath" while she was in bed with a man, "Shade." Shade brought a gun to the house and "left the weapon out on the bed." After J.J.V.M.M. crawled out of the bathtub, T.S. told him to go back to the bathtub

---

[2] J.J.V.M.M. suffers from asthma and additional severe respiratory issues.

because she was with Shade. She then heard a "pop" and shortly after realized that J.J.V.M.M. had shot himself in the foot with the gun. The trial court could have concluded that T.S. knew there was a gun in her home because the gun was left on the same bed she was lying on immediately before the child shot himself.

After J.J.V.M.M. shot himself in the foot, T.S. had sexual relations with Shade. She then drove Shade back to his home before returning home to clean the child's wound in the bathtub. T.S. then called her father—who alerted J.D.—and her father and J.D. took the child to the hospital without T.S. Vasquez testified he filed charges against T.S. for injury to a child by omission.

We conclude that a factfinder could reasonably have formed a firm belief or conviction that T.S. engaged in conduct—including leaving a two-year-old child in the bathtub alone; allowing a gun to be in such proximity that a two-year-old child could obtain it and shoot himself; delaying treatment to her child so that she could have sexual relations with Shade and drive Shade home; and refusing to take her child to the hospital after he was shot with a gun—that endangers the physical or emotional well-being of the child. We therefore hold legally and factually sufficient evidence supports the trial court's finding that termination was warranted under section 161.001(b)(1)(E), and overrule T.S.'s arguments to the contrary.

### *Best Interest*

### *Applicable Law*

In her final issue, T.S. challenges the legal sufficiency of the trial court's order that termination of her parental rights was in the best interest of J.J.V.M.M. There is a strong presumption that a child's best interest is served by maintaining the relationship between a child and the natural parent, and the Department has the burden to rebut that presumption by clear and convincing evidence. *See, e.g.*, *In re R.S.-T.*, 522 S.W.3d at 97. To determine whether the

Department satisfied this burden, the Texas Legislature has provided several factors[3] for courts to consider regarding a parent's willingness and ability to provide a child with a safe environment, and the Texas Supreme Court has provided a similar list of factors[4] to determine a child's best interest. TEX. FAM. CODE § 263.307(b); *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

A best interest finding, however, does not require proof of any particular factors. *See In re G.C.D.*, No. 04-14-00769-CV, 2015 WL 1938435, at *5 (Tex. App.—San Antonio Apr. 29, 2015, no pet.) (mem. op.). Neither the statutory factors nor the *Holley* factors are exhaustive, and "[e]vidence of a single factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest." *In re J.B.-F.*, No. 04-18-00181-CV, 2018 WL 3551208, at *3 (Tex. App.—San Antonio July 25, 2018, pet. denied) (mem. op.). Additionally, evidence that proves a statutory ground for termination is probative on the issue of best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). Finally, "[a] trier of fact may measure a parent's future conduct by his past conduct [in] determin[ing] whether termination of parental rights is in the child's best interest." *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied).

---

[3] These factors include, inter alia: "(1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills [. . .]; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child." TEX. FAM. CODE § 263.307(b).

[4] Those factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist those individuals to promote the best interest of the child; (6) the plans for the child by these individuals or the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley*, 544 S.W.2d at 371–72.

*Application*

The evidence at trial established that T.S. was addicted to methamphetamines; that she tested positive for methamphetamines and other drugs; that she thereafter refused to submit to further drug tests—including court-ordered drug testing; and that she failed to complete treatment for her drug addiction. Drug use can destabilize the home and expose children to physical and emotional harm if not resolved. *See, e.g., In re K.J.G.*, No. 04-19-00102-CV, 2019 WL 3937278, at *8 (Tex. App.—San Antonio Aug. 21, 2019, pet. denied) (mem. op.). Given T.S.'s failure to complete the drug testing and treatment requirements of her service plan, the factfinder could have determined that T.S. would be unable to obtain the treatment she required to adequately care for J.J.V.M.M. *See In re E.D.*, 419 S.W.3d at 620.

The trial court also considered testimony relating to the child's foster-to-adopt placement. When he was first placed, J.J.V.M.M. was small, skinny, did not speak, was not social, did not make eye contact, and was not interactive. After time in placement, he spoke in five-to-six word sentences, asked and answered questions, had gained weight, and was more physically active. J.J.V.M.M. bonded with his foster family, referring to them as mommy and daddy. His foster mother is a nurse, and through her knowledge of medicine has been able to get the child's respiratory issues under control.[5]

At the time of trial, T.S. faced multiple pending charges, including criminal allegations related to J.J.V.M.M. In addition to her charge for injury to a child by omission resulting from the gunshot incident, T.S. was charged with aggravated assault with a deadly weapon arising after T.S. confronted J.J.V.M.M.'s father's wife.[6]

---

[5] The child's respiratory issues were so severe that he experienced cardiac arrest in July 2021.

[6] The Department considered (and rejected) the father's wife as a possible placement while the father remained incarcerated.

After reviewing the evidence under the appropriate standards of review, we conclude a reasonable factfinder could have formed a firm belief or conviction that termination of T.S.'s parental rights was in the best interest of J.J.V.M.M. *In re J.F.C.*, 96 S.W.3d at 266. We therefore hold legally and factually sufficient evidence supports the trial court's best interest finding, and we overrule T.S.'s arguments to the contrary.

## CONCLUSION

We affirm the trial court's order of termination.

Lori I. Valenzuela, Justice