

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00523-CV

**IN THE INTEREST OF A.H. III**, a Child

From the 407th Judicial District Court, Bexar County, Texas
Trial Court No. 2018-PA-01990
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:    Lori I. Valenzuela, Justice

Sitting:       Patricia O. Alvarez, Justice
               Beth Watkins, Justice
               Lori I. Valenzuela, Justice

Delivered and Filed: January 25, 2023

AFFIRMED

A.F. appeals the trial court's order terminating her parental rights to her child A.H. III (born 2014).[1] A.F. argues the evidence is legally and factually insufficient to support the trial court's finding that termination is in the best interest of A.H. III. We affirm.

### BACKGROUND

On September 4, 2018, the Texas Department of Family and Protective Services removed A.H. III from A.F.'s care due to allegations of physical abuse and drug use by the mother. The Department obtained temporary managing conservatorship over A.H. III, placed him in a foster home, and filed a petition to terminate A.F.'s parental rights. The Department also created a family

---

[1] To protect the privacy of the minor child, we use initials to refer to the child and his biological parents. TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

service plan requiring A.F. to, inter alia, complete a psychological evaluation, attend individual therapy, complete a domestic violence/anger management course, undergo a drug assessment and treatment evaluation, refrain from illegal drug use and alcohol abuse, submit to random drug testing, and participate in a parenting class as a condition of reunification. The Department ultimately pursued termination of A.F.'s parental rights.

On February 18, 2020, June 1, 2020, September 25, 2020, and October 9, 2020, the trial court held a four-day bench trial (the "original trial"). On January 27, 2021, the trial court rendered a written order denying termination and naming A.F. and the father as possessory managing conservators but allowing the Department to preserve the grounds for termination. Although the trial court originally denied termination, trial courts may terminate parental rights after the denial of a prior petition to terminate under certain circumstances enumerated by statute. *See* TEX. FAMILY CODE § 164.004. Among other things, the trial court may consider evidence presented at a previous hearing in a suit for termination of parental rights with respect to the same child. *Id.* § 164.001(b).

On December 2, 2021, the Department filed a motion to modify the prior order and again sought termination of A.F.'s parental rights. On August 4, 2022, the trial court held a one-day bench trial at which A.F. appeared. The trial court heard testimony from two witnesses: (1) the Department's caseworker, Dietra Marquez; and (2) A.F. After the conclusion of trial, the court signed an order terminating A.F.'s parental rights pursuant to section 161.001(b)(1)(N) and (O) and its finding that termination of A.F.'s parental rights was in the best interest of A.H. III. A.F. appealed.

**ANALYSIS**

A.F. challenges the legal and factual sufficiency of the evidence on which the trial court relied to conclude that termination was in the best interest of A.H. III.

### *Standard of Review*

The involuntary termination of a natural parent's rights implicates fundamental constitutional rights and "divests the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit from the parent." *In re S.J.R.-Z.*, 537 S.W.3d 677, 683 (Tex. App.—San Antonio 2017, pet. denied) (internal quotation marks omitted). "As a result, appellate courts must strictly scrutinize involuntary termination proceedings in favor of the parent." *Id.* The Department had the burden to prove, by clear and convincing evidence, both that a statutory ground existed to terminate A.F.'s parental rights and that termination was in the best interest of A.H. III. TEX. FAM. CODE § 161.206; *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE § 101.007; *In re S.J.R.-Z.*, 537 S.W.3d at 683.

When reviewing the sufficiency of the evidence supporting a trial court's order of termination, we apply well-established standards of review. *See In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). To determine whether the Department presented clear and convincing evidence, a legal sufficiency review requires us to "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *Id.* at 266. We "assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *In re R.S.-T.*, 522 S.W.3d 92, 98 (Tex. App.—San Antonio 2017, no pet.). "A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *In re J.F.C.*, 96 S.W.3d at 266. Nevertheless, "we may not simply disregard undisputed facts that do not support the finding; to do so would not comport with the heightened

burden of proof by clear and convincing evidence." *In re S.L.M.*, 513 S.W.3d 746, 748 (Tex. App.—San Antonio 2017, no pet.). If a reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then the evidence is legally sufficient. *Id.* at 747.

In contrast, in conducting a factual sufficiency review, we must review and weigh all the evidence, including the evidence that is contrary to the trial court's findings. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). We consider whether the disputed evidence is such that a reasonable factfinder could not have resolved it in favor of the challenged finding. *In re J.F.C.*, 96 S.W.3d at 266. The evidence is factually insufficient only if "in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction." *Id.*

In both legal and factual sufficiency review, the trial court, as factfinder, is the sole judge of the weight and credibility of the evidence. *In re A.F.*, No. 04-20-00216-CV, 2020 WL 6928390, at *2 (Tex. App.—San Antonio Nov. 25, 2020, no pet.) (mem. op.). We must defer to the factfinder's resolution of disputed evidentiary issues and cannot substitute our judgment for that of the factfinder. *See, e.g., In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam) (factual sufficiency); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (legal sufficiency).

### *Best Interest*

### *Applicable Law*

A.F. challenges the legal and factual sufficiency of the trial court's order that termination of her parental rights was in the best interest of A.H. III. There is a strong presumption that a child's best interest is served by maintaining the relationship between a child and the natural parent, and the Department has the burden to rebut that presumption by clear and convincing evidence. *See, e.g., In re R.S.-T.*, 522 S.W.3d at 97. To determine whether the Department satisfied

this burden, the Texas Legislature has provided several factors[2] for courts to consider regarding a parent's willingness and ability to provide a child with a safe environment, and the Texas Supreme Court has provided a similar list of factors[3] to determine a child's best interest. TEX. FAM. CODE § 263.307(b); *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

A best interest finding, however, does not require proof of any particular factors. *See In re G.C.D.*, No. 04-14-00769-CV, 2015 WL 1938435, at *5 (Tex. App.—San Antonio Apr. 29, 2015, no pet.) (mem. op.). Neither the statutory factors nor the *Holley* factors are exhaustive, and "[e]vidence of a single factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest." *In re J.B.-F.*, No. 04-18-00181-CV, 2018 WL 3551208, at *3 (Tex. App.—San Antonio July 25, 2018, pet. denied) (mem. op.). "A trier of fact may measure a parent's future conduct by his past conduct [in] determin[ing] whether termination of parental rights is in the child's best interest." *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). Finally, drug use can destabilize the home and expose children to physical and emotional harm if not resolved. *See, e.g., In re K.J.G.*, 2019 WL 3937278,

---

[2] These factors include, inter alia: "(1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills [. . .]; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child." TEX. FAM. CODE § 263.307(b).

[3] Those factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist those individuals to promote the best interest of the child; (6) the plans for the child by these individuals or the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

at *8 (Tex. App.—San Antonio Aug. 21, 2019, pet denied). Evidence that proves a statutory ground for termination is also probative on the issue of best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002).

*Application*

The Department initiated this case due to concerns about allegations of physical abuse to A.H. III's sibling (who is no longer part of this case) and A.F.'s alleged drug use. On appeal, A.F. argues that because this is a case of "general neglect" not "involving extreme family violence or out of control drug use," she "simply needs to re-establish a relationship with the child." She contends the Department failed to provide sufficient evidence to justify termination of her parental rights based on the best interest of A.H. III. According to A.F., because her rights were not terminated after the original trial, she merely needs to spend time with A.H. III to continue the bond that exists between them.

The Department's caseworker, Marquez, testified that at the time of the original trial, A.F. had mostly completed her service plan. She was still engaged in counseling and random drug testing. After the trial court denied termination and signed a final order appointing the Department managing conservator, the Department created a new service plan. At that time, A.F. resided in New Mexico, while A.H. III was in a foster placement in Texas. Marquez sent A.F. a copy of the service plan by email and followed up with a text message.

A.F.'s new service plan required A.F. to continue random drug testing, refrain from domestic violence relationships, and continue taking mental health medications. However, A.F. testified that she did not comply with the service plan because she believed she was not going to get her son back even if she did. At one point, Marquez requested A.F. to report for drug testing, and A.F. refused to do so.

A.F. later returned to San Antonio, but according to Marquez, never communicated that she had returned. A.F. only visited with A.H. III one time (in January 2021) between the time she was appointed possessory managing conservator (in October 2020) and trial (in August 2022). *See In re T.T.B.*, No. 04-17-00190-CV, 2017 WL 3430900, at *3 (Tex. App.—San Antonio Aug. 9, 2017, no pet.) (failure to visit child for nine months supports best interest finding). A.F. did not attend a scheduled visit in April 2021. A.F. requested another visit in July 2021, but after consulting with the child's ad litem, Marquez denied the request. A.F. has since neither sought to visit nor actually visited with A.H. III. A.F.'s failure to visit A.H. III for nineteen months weighs in favor of termination.

Marquez testified that during the pendency of the motion to modify, the father was arrested for assault causing bodily injury to a family member. A.F. testified that the father "did get arrested at my house" as the parents "were arguing." However, according to A.F., the father did not assault her, and it was simply a misunderstanding: "When the cops pulled up, I had fallen down and [the father] was helping me up. And I had scraped myself and they thought that he had hit me." The trial court could have disbelieved A.F.'s testimony that the domestic violence incident with the father was a misunderstanding by the police, and instead believed A.F. was unable to provide a safe and stable home for A.H. III.

The trial court considered evidence that A.F. could not provide for A.H. III's physical and emotional well-being. Although A.F. testified at trial that she was employed and lived alone in a home, she provided no proof of employment or stable housing to the Department. A.F. also did not stay in contact with Marquez because A.F. did not feel comfortable talking to Marquez and had requested another caseworker be assigned. It is uncontested that A.F. did not attempt to comply with her new service plan; she testified, "I did nothing due to the fact that [Marquez] told me – she's been telling me that it's too late to get my son back." A.F.'s failure to comply with her service

plan further supports a finding that termination was in the best interest of the child. *See In re S.B.*, 207 S.W.3d 877, 888 (Tex. App.—Fort Worth 2006, no pet.).

A.F. refused to comply with drug testing requirements, and Marquez testified that there were no indications A.F. maintained sobriety. The trial court could have inferred from A.F.'s refusal to test that she continued to use drugs. *In re K.C.B.*, 280 S.W.3d 888, 895 (Tex. App.—Amarillo 2009, pet. denied) ("The trial court may infer from a refusal to take a drug test that appellant was using drugs."). Because drug use can destabilize the home and expose children to physical and emotional harm if not resolved, its use weighs in favor of termination. *See, e.g., In re K.J.G.*, 2019 WL 3937278, at *8 (Tex. App.—San Antonio Aug. 21, 2019, pet denied).

A.H. III's siblings—originally a part of this case—were placed with their paternal grandmother. However, according to Marquez, A.H. III could not be placed with them because he suffers from post-traumatic stress disorder triggered by a violent incident involving one of his siblings. Marquez further testified that A.H. III expressed that he has no desire to see his mother or siblings, and that he wishes to be adopted. A.H. III's desire to be adopted by a "forever family" instead of returned to his mother strongly weighs in favor of termination. *See In re L.G.D.*, No. 04-22-00330-CV, 2022 WL 17173901, at *4 (Tex. App.—11 San Antonio, Nov. 23, 2022, no pet.) (finding eight-year-old child's desire not to return to mother's custody strongly weighs in favor of termination).

After reviewing the evidence under the appropriate standards of review, we conclude a reasonable factfinder could have formed a firm belief or conviction that termination of A.F.'s parental rights was in the best interest of A.H. III. *In re J.F.C.*, 96 S.W.3d at 266. We therefore hold legally and factually sufficient evidence supports the trial court's best interest finding, and we overrule A.F.'s arguments to the contrary.

## CONCLUSION

We affirm the trial court's order of termination.

Lori I. Valenzuela, Justice