

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-23-00250-CV

**IN THE INTEREST OF J.R.D.-A., JR.**, I.R.D.-A., E.R.D.-A., Children

From the 225th Judicial District Court, Bexar County, Texas
Trial Court No. 2021PA00549
Honorable Raul Perales, Judge Presiding

Opinion by:    Lori I. Valenzuela, Justice

Sitting:        Luz Elena D. Chapa, Justice
                Lori I. Valenzuela, Justice
                Sandee Bryan Marion, Chief Justice (Ret.)[1]

Delivered and Filed: August 9, 2023

AFFIRMED

Mother appeals the trial court's order terminating her parental rights to her children J.R.D.-A., Jr. (born 2014), I.R.D.-A. (born 2015), and E.R.D.-A. (born 2017).[2] Mother argues the evidence is legally and factually insufficient to support the trial court's finding that termination is in the best interests of her children. Although Father does not appeal the trial court's order terminating his parental rights, he appeals the trial court's appointment of the Department as sole managing conservator. We affirm.

---

[1] The Honorable Sandee Bryan Marion, Chief Justice (Retired) of the Fourth Court of Appeals, sitting by assignment of the Chief Justice of the Texas Supreme Court. *See* TEX. GOV'T CODE §§ 74.003, 75.002, 75.003.

[2] To protect the privacy of the minor children, we use initials to refer to the children and refer to the children's biological Mother, Father, and Grandmother as such. TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

## BACKGROUND

On March 30, 2021, the Texas Department of Family and Protective Services removed J.R.D.-A., Jr., I.R.D.-A., and E.R.D.-A. due to allegations of neglectful supervision, domestic violence by Father, and drug use by both parents. The Department obtained temporary managing conservatorship over the children, placed them with their paternal Grandmother (pending a home study), and filed a petition to terminate Mother and Father's parental rights.

The Department also created family service plans for both parents. The service plans required Mother and Father to, inter alia, obtain safe, stable, and appropriate housing and provide proof of same; participate in parenting classes; complete domestic violence classes; undergo a drug assessment and treatment; refrain from illegal drug use and alcohol abuse; submit to random drug testing; complete a psychological evaluation; attend individual counseling; and refrain from criminal activity as a condition of reunification. The Department ultimately pursued termination of Mother and Father's parental rights.

On June 14, 2022, the trial court held a one-day bench trial. The trial court heard testimony from five witnesses: (1) Department caseworker Rita Garcia; (2) Father; (3) Mother; (4) Department caseworker Alyssa Miller; and (5) Grandmother. After the conclusion of trial, the trial court signed an order terminating Mother and Father's parental rights pursuant to section 161.001(b)(1)(D), (E), (O) and (P) and made a finding that termination of Mother and Father's parental rights was in the best interests of the children. Mother and Father appealed.

## BEST INTERESTS

Mother challenges the legal and factual sufficiency of the evidence on which the trial court relied to conclude that termination was in the best interests of the children.

***Standard of Review***

The involuntary termination of a natural parent's rights implicates fundamental constitutional rights and "divests the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit from the parent." *In re S.J.R.-Z.*, 537 S.W.3d 677, 683 (Tex. App.—San Antonio 2017, pet. denied) (internal quotation marks omitted). "As a result, appellate courts must strictly scrutinize involuntary termination proceedings in favor of the parent." *Id.* The Department had the burden to prove, by clear and convincing evidence, both that a statutory ground existed to terminate Mother's parental rights and that termination was in the best interests of the children. TEX. FAM. CODE § 161.206; *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE § 101.007; *In re S.J.R.-Z.*, 537 S.W.3d at 683.

When reviewing the sufficiency of the evidence supporting a trial court's order of termination, we apply well-established standards of review. *See In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). To determine whether the Department presented clear and convincing evidence, a legal sufficiency review requires us to "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *Id.* at 266. We "assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *In re R.S.-T.*, 522 S.W.3d 92, 98 (Tex. App.—San Antonio 2017, no pet.). "A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *In re J.F.C.*, 96 S.W.3d at 266. Nevertheless, "we may not simply disregard undisputed facts that do not support the finding; to do so would not comport with the heightened

burden of proof by clear and convincing evidence." *In re S.L.M.*, 513 S.W.3d 746, 748 (Tex. App.—San Antonio 2017, no pet.). If a reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then the evidence is legally sufficient. *Id*. at 747.

In contrast, in conducting a factual sufficiency review, we must review and weigh all the evidence, including the evidence that is contrary to the trial court's findings. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). We consider whether the disputed evidence is such that a reasonable factfinder could not have resolved it in favor of the challenged finding. *In re J.F.C.*, 96 S.W.3d at 266. The evidence is factually insufficient only if "in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction." *Id.*

In both legal and factual sufficiency review, the trial court, as factfinder, is the sole judge of the weight and credibility of the evidence. *In re M.G.*, No. 04-20-00216-CV, 2020 WL 6928390, at *2 (Tex. App.—San Antonio Nov. 25, 2020, no pet.) (mem. op.). We must defer to the factfinder's resolution of disputed evidentiary issues and cannot substitute our judgment for that of the factfinder. *See, e.g.*, *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam) (factual sufficiency); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (legal sufficiency).

### *Applicable Law*

Mother challenges the legal and factual sufficiency of the trial court's order that termination of her parental rights was in the best interests of J.R.D.-A., Jr., I.R.D.-A., and E.R.D.-A. There is a strong presumption that a child's best interest is served by maintaining the relationship between a child and the natural parent, and the Department has the burden to rebut that presumption by clear and convincing evidence. *See, e.g.*, *In re R.S.-T.*, 522 S.W.3d at 97. To determine whether the Department satisfied this burden, the Texas Legislature has provided

several factors[3] for courts to consider regarding a parent's willingness and ability to provide a child with a safe environment, and the Texas Supreme Court has provided a similar list of factors[4] to determine a child's best interest. TEX. FAM. CODE § 263.307(b); *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

A best interest finding, however, does not require proof of any particular factors. *See In re G.C.D.*, No. 04-14-00769-CV, 2015 WL 1938435, at *5 (Tex. App.—San Antonio Apr. 29, 2015, no pet.) (mem. op.). Neither the statutory factors nor the *Holley* factors are exhaustive, and "[e]vidence of a single factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest." *In re J.B.-F.*, No. 04-18-00181-CV, 2018 WL 3551208, at *3 (Tex. App.—San Antonio July 25, 2018, pet. denied) (mem. op.). "A trier of fact may measure a parent's future conduct by his past conduct [in] determin[ing] whether termination of parental rights is in the child's best interest." *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). Finally, drug use can destabilize the home and expose children to physical and emotional harm if not resolved. *See, e.g., In re K.J.G.*, 2019 WL 3937278,

---

[3] These factors include, inter alia: "(1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills [. . .]; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child." TEX. FAM. CODE § 263.307(b).

[4] Those factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist those individuals to promote the best interest of the child; (6) the plans for the child by these individuals or the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

at *8 (Tex. App.—San Antonio Aug. 21, 2019, pet denied). Evidence that proves a statutory ground for termination is also probative on the issue of best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002).

### *Application*

Mother argues there is insufficient evidence on *Holley* factors one, two, three, five, and seven and, therefore, the judgment of the trial court must be reversed. A best interest finding, however, does not require proof of any particular factors, and evidence of a single factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest. *See In re G.C.D.*, 2015 WL 1938435, at *5; *In re J.B.-F.*, 2018 WL 3551208, at *3. Although we reject Mother's primary contention, we nevertheless review the trial court's best interest finding.

There was significant evidence at trial of Mother's prolonged use of cocaine. Father testified Mother used cocaine during the period of the children's removal. He stated that when he and Mother used drugs together, they would leave the children with Grandmother. Mother admitted to using cocaine in 2018 and struggling with cocaine use for several years. Although Mother insisted she was clean at trial, she had not undergone any drug treatment, and she was unsuccessfully discharged from drug court after approximately one-and-a-half months. Mother testified that she was not discharged from drug court due to a positive drug test; however, she admitted that while she was participating in drug court, she tested positive on a drug test required by the Department. She also failed to timely show up for inpatient treatment and lost the bed that had been reserved for her. Mother blamed the Department for her failure to engage in drug treatment. Grandmother testified that Mother and Father had "a severe issue with drugs" and that they would "get clean and then go back to it." Because drug use can destabilize the home and expose children to physical and emotional harm if not resolved, Mother's use weighs in favor of

termination. *See, e.g.*, *In re K.J.G.*, 2019 WL 3937278, at *8 (Tex. App.—San Antonio Aug. 21, 2019, pet denied).

Aside from destabilizing the home, Mother's continued use of cocaine violated the terms of her service plan. Her service plan required her to drug test, abstain from drug use, and successfully complete drug treatment, but she did not. Additionally, Mother failed to complete parenting classes or engage in counseling. The trial court terminated on subsection (O) and (P) grounds. *See* TEX. FAMILY CODE § 161.001(b)(1)(O) (failure to comply with court-ordered service plan), (b)(1)(P)(ii) (continued use of controlled substances). Mother's failure to comply with her service plan and continued cocaine use further supports a finding that termination was in the best interests of the children. *See In re S.B.*, 207 S.W.3d 877, 888 (Tex. App.—Fort Worth 2006, no pet.).

The trial court also considered evidence that Mother could not provide for the children's physical and emotional well-being. At the time of their removal, the children were not enrolled in school. Grandmother testified that Mother "refused to put the kids in school." J.R.D.-A., Jr. was a grade level behind after being held back in first grade. I.R.D.-A. faced significant developmental delay and was non-verbal when the Department first became involved with the family. I.R.D.-A. still required "very intensive speech therapy," which was provided both by her foster family and the school.

The children have been in their current foster home since December 2021. Their foster family wishes to pursue adoption. That the children's needs—including I.R.D.-A.'s special needs—are being met in their current placement with a planned adoption further supports the trial court's finding that termination is in the children's best interests. *See In re A.M.M.*, No. 04-19-00806-CV, 2020 WL 2139308, at *4 (Tex. App.—San Antonio May 6, 2020, pet. denied).

After reviewing the evidence under the appropriate standards of review, we conclude a reasonable factfinder could have formed a firm belief or conviction that termination of Mother's parental rights was in the best interests of J.R.D.-A., Jr., I.R.D.-A., and E.R.D.-A. *In re J.F.C.*, 96 S.W.3d at 266. We therefore hold legally and factually sufficient evidence supports the trial court's best interest finding, and we overrule Mother's arguments to the contrary.

### STANDING TO CHALLENGE CONSERVATORSHIP DETERMINATION

Father did not appeal the trial court's termination of his parental rights. However, Father challenges the appointment of the Department as sole managing conservator. According to Father, Grandmother should have been designated as the children's managing conservator.

An order terminating the parent-child relationship divests a parent of legal rights and duties with respect to the child. *In re J.D.G.*, 570 S.W.3d 839, 856 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (citing TEX. FAM. CODE § 161.206(b)). Once an appellate court overrules a parent's challenge to an order terminating his parental rights, the trial court's appointment of the Department as sole managing conservator may be considered a "consequence of the termination." *Id.*

Here, Father did not appeal the trial court's determination of his parental rights. The trial court's order therefore finally divested Father of his legal rights and duties related to the children. *See id.* Consequently, Father does not have standing to challenge the appointment of the Department as the children's sole managing conservator. *See id.* Absent standing to challenge the trial court's conservatorship determination, we cannot address the merits of Father's argument on appeal, and we accordingly overrule his sole issue.

### CONCLUSION

We affirm the trial court's order of termination.

Lori I. Valenzuela, Justice